No. 88,844

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF
LINCOLN, KANSAS, *Appellee*, v. WRAY NIELANDER and JACK
JACKSON, *Appellants*.

62 P.3d 247

Opinion filed January 31, 2003.

*David R. Cooper*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *Julie A. McKenna*, of McKenna & Trochek, of Salina, was with him on the brief for appellants.

*Wendall F. Cowan*, of Shook, Hardy & Bacon L.L.P., of Overland Park, argued the cause, and *Michael T. Jilka*, of the same firm, was with him on the brief for appellee.

*Alan F. Alderson*, of Alderson, Alderson, Weiler, Conklin, Burghart & Crow, L.L.C., of Topeka, was on the brief for *amici curiae* Kansas County Treasurers Association, Kansas Registers of Deeds Association, Kansas County Clerks and Election Officials Association, and Kansas County Sheriffs Association.

The opinion of the court was delivered by

ABBOTT, J.: This is an appeal from an injunction that permitted a board of county commissioners to fire a deputy sheriff and enjoined the sheriff to secure advance approval by the board of county commissioners for expenditures in excess of $250.

Jack Jackson, who resided in Salina, Kansas, was employed by Lincoln County Sheriff Wray Nielander as a part-time deputy from November 3, 2001, until January 1, 2002, at which time Jackson

became a full-time deputy. The Board of Lincoln County Commissioners (Board) twice took action to discharge Jackson for the stated reason of unsatisfactory job performance. The second attempt by the Board followed adoption of a personnel policy purporting to grant the Board exclusive authority to hire and fire county employees.

Nielander disputed the Board's authority to discharge a duly appointed deputy sheriff and continued Jackson's employment. The Board sought and obtained an injunction prohibiting Nielander from employing Jackson and enjoining Jackson from holding, or seeking to hold, employment with Lincoln County.

On January 22, 2002, the Board terminated Jackson's employment pursuant to Lincoln County Employee Rules and Regulations. Minutes from the January 22 Board meeting stated: "John Kobbeman moved to terminate Law Enforcement Officer Jack Jackson, for unsatisfactory job performance, effective immediately, seconded by Doug Gomel. Motion carried unanimously."

Nielander continued Jackson's employment.

On February 28, 2002, the Board amended its Employee Rules and Regulations to read:

"EMPLOYMENT RELATIONSHIP
"**All employees of Lincoln County are employees at will unless an employee has an express, written contract of employment with Lincoln County.** As an employee at will, the employee can be discharged at any time, with or without cause. Similarly, an employee can resign at any time, with or without notice or cause. Only the Board of County Commissioners can make exceptions to this policy or enter into employment contracts, which must be in writing and signed by the Chairperson of the Board.

"These Employee Rules and Regulations do not constitute in any way a contract of employment. Lincoln County reserves the right to amend its personnel policies and procedures at any time, for any reason, with or without advance notice.

"The authority to hire or discharge any Lincoln County employee is vested solely in the Board of County Commissioners of Lincoln County. Elected officials and department heads may recommend the hiring or discharge of an individual, but approval by the Board of County Commissioners is required, and no personnel action is effective unless and until such approval is granted. The Board of County Commissioners may also effect personnel actions without elected official or department head recommendation."

Immediately after it passed the amended Employee Rules and Regulations, the Board again terminated Jackson's employment for unsatisfactory job performance, effective February 28, 2002. The same day, the Board released Jackson's February 2002 gross payroll warrant in the amount of $2,304.83.

Nielander resisted the efforts of the Board to terminate Jackson and continued to employ him. Jackson continued to work full-time throughout the litigation at the district court level and asserted that he would continue to do so until Nielander decided otherwise.

Prior to the commencement of Nielander's service, the Board adopted a purchase policy on September 10, 2001. The Board's purchase policy stated:

"All county departments, except the highway department, must receive approval from the County Commissioners prior to the purchase of any equipment and/or supplies if said purchase should exceed $250.00. County department heads should complete a purchase request form, forms located in the County Clerk's Office, with all appropriates [sic] items and an expected purchase costs. *Note—Department head must present at least two cost quotations for purchases exceeding $250.00.

. . . .

"All Lincoln County departments will abide by their fiscal year budget, if a department appears to be exceeding their budget limitations, the following actions will be mandated:

"The department head **must** have *all* purchases pre-approved, *regardless of the cost*, prior to ordering such equipment and/or supplies. Purchase request forms can be located at the County Clerk's Office."

The Board and Nielander stipulate that Nielander exceeded his calendar year 2001 budget by approximately $37,000. Nielander also stipulates that despite his knowledge of the purchase policy, "there have been occasions when he has not obtained approval from the County Commissioners prior to the purchase of equipment and/or supplies in excess of $250."

The Board filed a verified petition for an ex parte restraining order and a temporary and permanent injunction against Nielander and Jackson on March 6, 2002. In the petition, the Board sought injunctive relief from the Lincoln District Court, prohibiting Nie-

lander from employing Jackson as a deputy and from making any purchase in excess of $250 without prior Board approval.

The district court concluded that Nielander was subject to the Lincoln County Employee Rules and Regulations and that the Board acted within its authority when it discharged Jackson on February 28, 2002. The district court also found that the Board's purchase policy requiring prior approval for purchases of supplies or equipment in excess of $250 was reasonable. The court ordered Jackson discharged as an employee of Lincoln County and enjoined him from working or attempting to work there. The district court in like manner enjoined Nielander from attempting to continue Jackson's employment. In addition, the district court entered an order mandatorily enjoining Nielander to comply with the Lincoln County purchasing policy.

Nielander and Jackson timely appealed the decision of the district court and moved for a stay pending the outcome of the appeal. After listening to arguments of counsel by conference call, District Judge Thomas M. Tuggle found that no compelling reason was presented justifying the grant of a stay. Therefore, the district court denied Nielander and Jackson's application for stay. On appeal, Nielander and Jackson challenge the authority of the Board to terminate a deputy's employment and to require preapproval of expenditures by a sheriff.

For their first assertion of error on appeal, Nielander and Jackson contend that the Board did not have the constitutional or statutory authority to hire or fire the duly appointed assistant to an elected county official.

The sheriff is an independently elected officer whose office, duties, and authorities are established and delegated by the legislature. The sheriff is not a subordinate of the board of county commissioners and neither are the undersheriff or the sheriff's deputies and assistants. Rather, the sheriff is a state officer whose duties, powers, and obligations derive directly from the legislature and are coextensive with the county board. The undersheriff and the sheriff's deputies and assistants are subordinates of the office of sheriff. The board of county commissioners is the means by which the legislature finances the operation of the office of the sheriff. The

board of county commissioners is not free to usurp the powers of the office of sheriff by controlling the hiring or firing of the deputies and assistants appointed by the sheriff.

The parties agree that the issue before this court involves statutory interpretation. "Interpretation of a statute is a question of law in which appellate review is unlimited." *In re Marriage of Phillips*, 272 Kan. 202, Syl. ¶ 1, 32 P.3d 1128 (2001).

The Board argues that K.S.A. 2001 Supp. 19-101a(a) authorizes boards of county commissioners to "transact all county business and perform all powers of local legislation and administration it deems appropriate." In addition, the Board maintains that K.S.A. 19-805(d) vests boards of county commissioners with the authority to supersede personnel decisions of sheriffs.

Nielander and Jackson state that Article 2, § 1 and Article 9, § 2 of the Kansas Constitution vest the legislature with the power to establish necessary county officers. They note that the legislature has created counties, corporate entities with boards of county commissioners to transact county business, as well as the offices of county clerk, county treasurer, register of deeds, and sheriff by way of various statutes. See K.S.A. 19-101; K.S.A. 2001 Supp. 19-101a; K.S.A. 19-201; K.S.A. 19-301; K.S.A. 19-501; K.S.A. 19-1201; K.S.A. 19-801a. Nielander and Jackson maintain that, although the Board is authorized to transact all county business and to engage in local legislation subject to certain statutory exceptions in K.S.A. 2001 Supp. 19-101a(a), sheriffs are expressly authorized by K.S.A. 19-805(a) to appoint, promote, demote, and dismiss deputies and assistants as the sheriff deems necessary to carry out the mandatory duties and obligations of his or her office. See K.S.A. 19-810; K.S.A. 19-811; K.S.A. 19-812; K.S.A. 19-813. Nielander and Jackson contend that the district court's conclusion that there were no statutes that would restrict the Board from "being the only word on hiring and discharging" is incorrect in that it conflicts with the powers of appointment provided to the sheriff by the legislature in K.S.A. 19-805(a) and K.S.A. 19-810. In addition, they argue that the district court's construction of K.S.A. 19-805(d), which begins "[a]ny personnel action taken by the sheriff under this section shall be subject to the following," reads the introductory clause out of the statute.

Nielander and Jackson argue that the Board's personnel policy and the district court's injunction neglect the separation of powers and duties provided by the legislature and, thus, contend that the district court has unconstitutionally and unlawfully expropriated the powers of the office of sheriff in favor of the Board.

The Kansas County Treasurers Association, the Kansas Registers of Deeds Association, the Kansas County Clerks and Election Officials Association, and the Kansas County Sheriffs Association, as *amici curiae*, seek to preserve what they believe is clear statutory authority giving their members the power to control the operation of their respective offices with regard to appointment, hiring, firing, promotion, and demotion of their deputies and assistants. The *amici curiae* assert that a decision upholding the district court's injunction will lead boards of county commissioners to adopt rules or regulations that would place them in complete control of personnel issues for all county employees. According to the *amici curiae*, this would render meaningless the statutory authority of elected county officials. The *amici curiae* ask this court to find that the Board acted in conflict with K.S.A. 19-805 when it passed the February 28, 2001, resolution and voted to terminate Jackson.

The legislature by statute has given elected officials, including the county clerk, treasurer, sheriff, and register of deeds, similar if not equivalent discretion and authority over employees and personnel matters. *Cf.* K.S.A. 19-302(a); K.S.A. 19-503(a); K.S.A. 19-805(a); K.S.A. 19-1202(a); Att'y Gen. Op. No. 93-64. Employing identical statutory language, the legislature also subjected personnel action taken by county clerks, sheriffs, registers of deeds, and treasurers to certain restrictions. See K.S.A. 19-302(c); K.S.A. 19-503(c); K.S.A. 19-805(d); K.S.A. 19-1202(c). The issues on appeal highlight the potential conflict between the Board's general home rule authority under K.S.A. 2001 Supp. 19-101a(a) and the sheriff's authority to appoint, promote, demote, and dismiss undersheriffs, deputies, and assistants under K.S.A. 19-805(a) and 19-810.

K.S.A. 19-805 provides:

"(a) In addition to the undersheriff, the sheriff also may appoint, promote, demote and dismiss additional deputies and assistants necessary to carry out the duties of the office, for whose official acts the sheriff is responsible. Persons may

also be deputized by such sheriff or undersheriff, in writing, to do particular acts. The sheriff and sureties of the sheriff shall be responsible, on the official bond of the sheriff, for the default or misconduct of the undersheriff and deputies.

"(b) Within the limitations of the budget for the financing of the operation of the sheriff's office as approved by the board of county commissioners, the sheriff may attend and may require the undersheriff, deputies and any assistants to attend any meeting or seminars which the sheriff determines will be beneficial to the operation of the sheriff's office.

"(c) The sheriff shall submit a budget for the financing of the operation of the sheriff's office to the board of county commissioners for their approval.

"(d) Any personnel action taken by the sheriff under this section shall be subject to the following: (1) Personnel policies and procedures established by the board of county commissioners for all county employees other than elected officials; (2) any pay plan established by the board of county commissioners for all county employees other than elected officials; (3) any applicable collective bargaining agreements or civil service system; and (4) the budget for the financing of the operation of the sheriff's office as approved by the board of county commissioners."

A sheriff's authority to hire and fire personnel must be juxtaposed against a board of county commissioners' authority to determine local affairs. In general, a board of county commissioners may exercise its powers of home rule to determine its local affairs in the manner and subject to the limitations provided by K.S.A. 2001 Supp. 19-101a and other laws of this state. See K.S.A. 19-101; K.S.A. 2001 Supp. 19-101a.

"Home rule powers are those granted by the Constitution or by legislative act to units of local government to transact local business and perform such local and administrative duties as these local units may deem appropriate, subject to certain limitations imposed upon such grant of power. [Citation omitted.] Home rule powers were granted to cities by constitutional amendment in 1961. Kan. Const. art. 12, § 5. In 1974, the legislature passed an act granting powers of home rule to counties. L. 1974, ch. 110. [See K.S.A. 19-101 et seq.] 'Counties in Kansas are now empowered to transact all county business and perform such powers of local legislation and administration as may be appropriate, subject, however, to the restrictions and prohibitions set forth in K.S.A. 19-101a.' [Citation omitted.]" Board of Trego County Comm'rs v. Kansas Dept. of Revenue, 261 Kan. 927, 930, 933 P.2d 691 (1997).

K.S.A. 2001 Supp. 19-101a contains a list of limitations, restrictions, and prohibitions on boards of county commissioners' powers of local legislation and administration. That statute reads, in per-

tinent part: "(15) Counties may not exempt from or effect changes in K.S.A. 19-302, 19-502b, 19-503, 19-805 or 19-1202, and amendments thereto."

Thus, a board of county commissioners may not exempt from or effect changes to the provisions of K.S.A. 19-805(a), which allow a sheriff to "appoint, promote, demote, and dismiss additional deputies and assistants necessary to carry out the duties of the office."

This court has indicated that a county sheriff " 'is the official responsible for his department and is subject to follow personnel policies of the county in relation to the county employees under his supervision. See K.S.A. 19-805(d).' " See *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 372, 22 P.3d 124 (2001).

In 1983, K.S.A. 19-805 was amended to its present form by S.B. 46. See L. 1983, ch. 91, sec. 6.

The *amici curiae* point to statements made by legislators about S.B. 46 and by others testifying before the Senate Committee as evidence of the lawmakers' intent to give elected county officials power over hiring and firing while limiting boards of county commissioners' authority to budgetary concerns.

"Interpretation of a statute is a question of law, and it is the function of the court to interpret a statute to give it the effect intended by the legislature. It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained."

"In determining legislative intent, courts are not limited to consideration of the language used in the statute, but may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act." *In re Tax Exemption Application of Lietz Construction Co.*, 273 Kan. 890, Syl. ¶¶ 3, 4, 47 P.3d 1275 (2002).

Mike Billinger, Ellis County Treasurer, distributed copies of his testimony to the Senate Committee and stated that "Senate Bill 46 was important to all County Treasurers in Kansas because it would effectively make them the administrators of their employees." *Hearings on S.B. 46 before the S. Comm. on Gov't Org.*, 1983 Kan. Leg. (Feb. 10, 1983).

Emery Rome, Ellis County Clerk, presented testimony addressing Section 2 of S.B. 46 "in which the Clerk is given the authority to appoint a deputy and hire and/or fire any additional help the Clerk would deem necessary." He expressed the feeling that "someone who worked with employees on a daily basis would be the best qualified to evaluate their performance." *Hearings on S.B. 46 before the S. Comm. on Gov't Org.*, 1983 Kan. Leg. (Feb. 10, 1983).

Harold Kraus, Ellis County Commissioner, testified concerning the lack of "statutory guidelines to insure County Commissioners of their rights to control the budgetary processes in the various elective offices in the counties." *Hearings on S.B. 46 before the S. Comm. on Gov't Org.*, 1983 Kan. Leg. (Feb. 10, 1983).

We find that the legislative history of S.B. 46 and K.S.A. 19-805(a) demonstrates the legislature's intent to vest sheriffs, not boards of county commissioners, with the authority to "appoint, promote, demote, and dismiss additional deputies and assistants." Moreover, under the plain language of K.S.A. 2001 Supp. 19-101a(a)(15), boards of county commissioners are prohibited from effecting changes to the provisions of K.S.A. 19-805(a).

Here, the Board attempted to vest itself with the sole authority to hire or discharge any Lincoln County employee and to limit the power of elected county officials to recommending the hiring or discharging of an individual. Immediately after the Board passed the amended Employee Rules and Regulations, the Board terminated Jackson's employment. The Board's actions were an attempt to effect changes to the sheriff's grant of authority under K.S.A. 19-805(a) to appoint, promote, demote, and dismiss deputies, and under K.S.A. 2001 Supp. 19-101a(a)(15), the Board was prohibited from effecting such a change.

The language of K.S.A. 19-805(d) indicates that boards of county commissioners may establish personnel policies and procedures for all nonelected county personnel, pay plans for all nonelected county personnel, collective bargaining agreements or a civil service system, and the budget for the financing of the operation of the sheriff's office. The introductory phrase of K.S.A. 19-805(d), "[a]ny personnel action taken by the sheriff," however, must not

be ignored. While personnel actions taken by sheriffs are "subject to" personnel policies, payment plans, collective bargaining agreements, and budgets established by boards of county commissioners, K.S.A. 19-805(d) does not give county commissioners the ability to supersede a sheriff's power to appoint, promote, demote, or dismiss his or her personnel.

We hold that the district court erred when it concluded that the Board acted within its authority when it discharged Jackson on February 28, 2002. We vacate the district court's injunction discharging Jackson as a deputy, enjoining Jackson from working or attempting to work as an employee of Lincoln County, and enjoining Nielander from attempting to continue Jackson's employment.

Next, Nielander and Jackson argue that the district court erred by issuing an injunction mandating Nielander's compliance with the Lincoln County purchasing policy requiring advance Board approval for the purchase of any equipment or supplies in excess of $250. Nielander and Jackson contend that the district court's injunction upholding the Board's purchase policy conflicts with a sheriff's statutory obligation to fulfill his or her duties within the limits of the approved budget.

The Board maintains that by virtue of home rule powers and authority to manage the financial affairs of the county, boards of county commissioners possess exclusive control over county expenditures, subject only to the limitation that such boards may not use their powers to deny elected officials the means to carry out the statutory duties of their office. The Board concedes in its brief that its authority to veto purchases of optional or discretionary items must yield in the case of expenditures necessary for an elected official to fulfill statutory duties. The Board maintains that the injunction issued by the district court is consistent with the general principles articulated in Attorney General Opinion 99-29.

Nielander and Jackson agree that boards of county commissioners have general authority over their county purse and that an exception to this general power is triggered when the expenditure or obligation is necessary in order for an elected official to carry out statutorily imposed duties. However, Nielander and Jackson contend that the district court's injunction enjoining the sheriff to se-

cure advance approval from the Board before expending more than $250 conflicts with statutes requiring him to fulfill his duties within the limits of the approved budget.

In addition, Nielander and Jackson state that "[t]here is no contention here that Nielander exceeded the budget approved by the [Board] or that the expenditures in excess of $250 were not necessary for the Sheriff to fulfill the obligations of his office." The Board requested the equitable remedy of injunctive relief, seeking protection from *prospective* injury. See *Empire Mfg. Co. v. Empire Candle, Inc.*, 273 Kan. 72, 86, 41 P.3d 798 (2002). Nielander's past expenditures in excess of $250 are not at issue.

The Board argues on appeal that boards of county commissioners, not sheriffs, must be given the final authority to decide which expenditures are necessary and which are discretionary in order to enable those boards to control discretionary spending. This argument is outside the purview of the district court's order and was not raised below. Issues not raised before the trial court cannot be raised on appeal. *Dalmasso v. Dalmasso*, 269 Kan. 752, 765, 9 P.3d 551 (2000).

The issue before this court is whether the district court correctly concluded that the Board has statutory authority to require Nielander to obtain advance approval for purchases in excess of $250.

We hold that where a board of county commissioners has approved a budget including necessary expenses, the sheriff cannot be required to obtain advance approval for purchases within the limits of the approved budget regardless of the amount. If an expenditure falls outside of the budget, *i.e.*, over budget, then the sheriff must request advance approval of the board regardless of the amount. The board must approve the expenditure if it is necessary for a sheriff to carry out his or her statutory duties. If a board fails to approve a necessary expenditure, then the sheriff's remedy is to mandamus the board.

Kansas Attorney General Opinions, although not binding, serve as persuasive authority. See *CPI Qualified Plan Consultants, Inc. v. Kansas Dept. of Human Resources*, 272 Kan. 1288, Syl. ¶ 3, 38 P.3d 666 (2002). For Attorney General opinions generally address-

ing this issue, see Attorney General Opinion Nos. 99-29; 87-37; 86-166; 84-53; 82-85; 80-69.

After examining the statutes in question, this court finds that where the expenditure in question is optional or discretionary, a board of county commissioners' authority over county expenditures will generally control. K.S.A. 19-212, K.S.A. 19-229, and K.S.A. 2001 Supp. 19-101a permit boards of county commissioners to require preapproval for discretionary purchases over $250 which are outside the sheriff's budget. A board of county commissioners may not require an elected official to obtain prior approval by the board for expenditures that are necessary for the elected official to carry out statutory duties, however.

In this case, the district court entered an order mandatorily enjoining Nielander to comply with the Lincoln County purchasing policy. The district court failed to find that Nielander need not obtain the Board's preapproval for expenditures within the sheriff's budget. This court reverses the district court and vacates the district court's injunction as being inconsistent with our holding.

For their final assertion of error, Nielander and Jackson argue that the district court's injunction is beyond the scope of the relief sought by the Board in that it enjoins Jackson from "working or attempting to work as a Lincoln County employee," while the Board only sought to enjoin Jackson "from working as a Deputy Sheriff in the Lincoln County Sheriff's Department."

Where a trial court's decision regarding an injunction is based on undisputed facts, an appellate court reviews the scope of the injunction de novo. *State Bd. of Nursing v. Ruebke*, 259 Kan. 599, 610-11, 913 P.2d 142 (1996).

The Board contends that the tenor of the district court's opinion makes it clear that the focus of the injunction was directed toward Jackson's activities as deputy sheriff and that the discrepancy in the phrasing employed by the district court is harmless error. According to the Board, the wording of the injunction is purely academic because Jackson has not worked in any other capacity for Lincoln County, nor has he applied to do so.

K.S.A. 60-906 mandates that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be spe-

cific in terms; *shall describe in reasonable detail*, and not by reference to the petition or other document . . . ." (Emphasis added.)

If the injunction enjoining Jackson from "working or attempting to work as a Lincoln County employee" refers to Jackson's employment as a deputy, it fails to describe in reasonable detail the activity to be enjoined. If the phrase is read literally as prohibiting Jackson from "working or attempting to work as a Lincoln County employee," it exceeds the scope of the relief sought by the Board. Viewed either way, the district court's injunctive order fails to meet the requirements of K.S.A. 60-906.

This court, however, has vacated the district court's injunction discharging Jackson as deputy and enjoining Jackson from working or attempting to work as an employee of Lincoln County. Due to our holding, the issue is moot. Pursuant to the general rule, appellate courts do not decide moot questions or render advisory opinions. *In re T.D.*, 27 Kan. App. 2d 331, 333, 3 P.3d 590, *rev. denied* 269 Kan. 933 (2000).

Affirmed in part and reversed in part.

DAVIS, J., not participating.

CAROL A. BEIER, J., assigned■