(85 P.3d 716)
No. 90,078

DOWLING REALTY, a Kansas General Partnership, and DAVID F. DOWLING, D.D.S., P.A., *Appellants*, v. CITY OF SHAWNEE, KANSAS, and MIDWEST HOLDINGS, LLC, *Appellees*.

Opinion filed
March 12, 2004.

*Deron A. Anliker* and *John M. Duggan,* of Duggan, Shadwick, Doerr & Kurlbaum, P.C., of Overland Park, for appellants.

*Marvin E. Rainey* and *Chad E. Humble,* of Rainey & Rainey, of Shawnee Mission, for appellee City of Shawnee.

*Mark R. Logan* and *Kevin L. Bennett,* of Law Offices of Kevin L. Bennett, P.A., of Shawnee, for appellee Midwest Holdings, LLC.

Before GREEN, P.J., MARQUARDT and MALONE, JJ.

MARQUARDT, J.: David F. Dowling, D.D.S., P.A., appeals the trial court's approval of Midwest Holdings, LLC's (Midwest) proposed development of Lot 1 near the corner of 75th and Quivera. We affirm in part, dismiss in part, reverse in part, and remand with directions.

Dr. Dowling, a dentist since 1979, was interested in the four lots located across the street from his office near the corner of 75th Street and Quivera in Shawnee, Kansas. Lot 1 had an abandoned Quik Trip convenience store on it and Lots 2, 3, and 4 were vacant. In 1990, Dr. Dowling purchased Lot 2. A couple of years later, Dr. Dowling purchased Lots 3 and 4. The lots were platted and the area was named Fenton Professional Plaza in honor of Dr. Dowling's father. Dr. Dowling planned a series of tiered office buildings for the lots so each building would have visibility from 75th Street.

Dr. Dowling constructed an office building on Lot 2 with approximately 6,400 square feet on the main level and 6,000 square feet on the lower level. Dr. Dowling built as close to the south property line as the City of Shawnee, Kansas (City) would allow

because visibility from 75th Street was important to him. Dr. Dowling shares the building with a chiropractor, a family practitioner, and an insurance broker. Lots 3 and 4 remain undeveloped.

In 2001, Dr. Dowling was "[s]hocked and surprised" when he found out that a large development was proposed for Lot 1. Dr. Dowling immediately contacted Paul Chaffee, the head of the City's planning department, to express his concerns about the development. Chaffee told Dr. Dowling that the site would be "hard to develop." Dr. Dowling asked Chaffee to keep him apprized of any activity regarding the property.

In June 2001, Kevin Tubbesing, a neighbor of Chaffee's, asked him about the process for getting a site plan approved. In the summer of 2001, Tubbesing entered a contract to purchase Lot 1; however, at some point, Midwest became the owner. Tubbesing is a 55 percent owner of Midwest. On August 29, 2001, a site plan application was filed which listed Midwest as the owner and developer with Tubbesing named as the contact person. The plan required approval from the Shawnee Planning Commission (Commission). Tubbesing has been a member of the Commission since June 2000.

Within 15 days after receiving the site plan application, the City's planning staff recommended that Midwest's plan be approved with minor modifications. The proposal was placed on the consent agenda for the September 17, 2001, Commission meeting. The recommendation was available to Commission members on September 14, 2001. Tubbesing testified that members of the public could have learned of the recommendation on that date. However, there is no evidence in the record on appeal that Dr. Dowling knew about the recommendation.

Dr. Dowling received a copy of the September 17th Commission agenda on September 17, 2001. When the consent agenda was announced, Dr. Dowling objected and asked that Midwest's proposal be removed from the consent calendar and that it be discussed. Dr. Dowling stated that the proposed building would have "such a negative impact" upon his property. Tubbesing agreed that the proposed building would likely block the view of Dr. Dowling's building from 75th Street.

Midwest's proposal was scheduled to be heard on the same evening as Deffenbaugh Industries, Inc.'s (Deffenbaugh) proposal regarding a landfill. The Deffenbaugh proposal was described as "acrimonious" and "conflict oriented"; consequently, Midwest's proposal was not considered until after midnight. According to a conversation that Tracy Thomas, a member of the Shawnee City Council (Council), had with Tubbesing prior to the September 17, 2001, meeting, Thomas asked Tubbesing whether the Commission was going to be tired after the Deffenbaugh matter; Tubbesing said, "That's my strategy, to put it on at the end of the meeting and they'll be tired and sail right through."

After the staff recommendation was presented, Dr. Dowling was given the opportunity to address the Commission. At the completion of Dr. Dowling's presentation, Tubbesing stepped down from the Commission bench and argued to the rest of the Commissioners in favor of Midwest's proposal. Dr. Dowling did not know Tubbesing, and he testified that Tubbesing did not identify himself for the record as a member of the Commission, nor did he disclose his 55 percent ownership in Midwest. Tubbesing stated that he told the Commission he was the owner of the property; however, the transcript states only that he was "general managing member of Midwest" and "developer of the project."

Even though Tubbesing never left the room during any of the proceedings, he did not vote on Midwest's proposal. Tubbesing never filed a disclosure of interest form pursuant to K.S.A. 75-4305. Midwest's proposal was approved by a vote of 7 to 2.

Mark Boettcher, a member of the Council, observed the September 17, 2001, meeting and was left with the impression that the approval of Midwest's proposal was not "exactly kosher." Boettcher found it troubling that a commissioner would address his own deal and believed that the process seemed "hurried up." He questioned whether the Commission fully investigated the matter.

Through the "call up" process, the issue was placed on the Council's agenda on September 24, 2001. Midwest's proposal was presented by Cary Daniel at the Council meeting; however, Tubbesing also spoke. Tubbesing denied that he spoke with Council member

Thomas about "slid[ing] this project through with the Deffenbaugh issue." At trial, Tubbesing testified that he had encouraged several Council members and the mayor to support Midwest's proposal between the September 17, 2001, Commission meeting and the September 24, 2001, Council meeting. Dr. Dowling and his attorney addressed the Council, and Chaffee made statements on behalf of the City's planning staff.

A majority vote was required to send Midwest's proposal back to the Commission, and a two-thirds vote was required to overturn the Commission's recommendation. The Council's motion to send Midwest's proposal back to the Commission failed on a 4 to 4 vote because the mayor chose not to vote. The mayor, who had recommended Tubbesing for his position on the Commission, declined to vote. The Council's vote to deny Midwest's proposal failed on a 3 to 5 vote.

Dr. Dowling filed a lawsuit in district court against the City and Midwest for failure to comply with site plan regulations, failure to follow lawful procedure, and lack of reasonableness. During discovery, Tubbesing was asked in an interrogatory:

"7. State whether you ever contacted, spoke or communicated in any way with any member of the City's staff, the Planning Commission, the City Council or the Mayor about the Property, the site plan for the Property or its approval? If so state:

a. The date of such contact;
b. Whether it was oral or in writing:
c. If in writing, identify all documents constituting such contact;
d. If oral, state in detail the substance and content of such communications; identify all persons present or involved in such communication; and state the location of such contact."

"[Answer:] Kevin Tubbesing may have had brief conversations with each Planning Commissioner regarding the project. He has no specific recollection regarding the date or content."

A bench trial was held, and the trial court concluded that Tubbesing's actions did not violate K.S.A. 75-4305 or the Commission's bylaws. The trial court found that Dr. Dowling failed to prove the City's action was unreasonable. The trial court ruled in favor of Midwest and the City. Dr. Dowling timely appeals.

## K.S.A. 75-4305

Dr. Dowling argues that as a matter of law, the trial court erred when it concluded Tubbesing did not violate K.S.A. 75-4305. Dr. Dowling maintains that since Tubbesing has a substantial interest in Midwest's site proposal, he was forbidden to exercise any action regarding the proposal.

Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the trial court's interpretation of a statute. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003).

K.S.A. 75-4305 states:

"(a) Any local governmental officer or employee who has not filed a disclosure of substantial interests shall, before acting upon any matter which will affect any business in which the officer or employee has a substantial interest, file a written report of the nature of the interest with the county election officer of the county in which is located all or the largest geographical part of the officer's or employee's governmental subdivision.

"(b) A local governmental officer or employee does not pass or act upon any matter if the officer or employee abstains from any action in regard to the matter."

In this case, Tubbesing did not vote on Midwest's proposal at the Commission hearing; however, that does not end our inquiry.

K.S.A. 75-4301a defines "substantial interest." As a 55 percent owner in Midwest, Tubbesing has a substantial interest in the site plan. See K.S.A. 75-4301a(a)(1) and (4).

We are unable to find any relevant Kansas case law on this issue. However, there are relevant Advisory Opinions of the Kansas Commission on Governmental Standards and Conduct (also referred to as the Governmental Ethics Commission).

In Advisory Opinion 95-10, the Governmental Ethics Commission noted that K.S.A. 75-4305 provides two options for a public employee who has substantial interest in a project: (1) File a statement reporting the nature of the interest with the appropriate county clerk, or (2) abstain from any action in the capacity as planning commissioner in decisions affecting the development. Further, if option two is chosen and a statement of substantial interest is not filed, there must be a total abstention from any action in the capacity as a planning commissioner.

In Advisory Opinion 1999-22, the Governmental Ethics Commission noted that under K.S.A. 75-4305, a disclosure of substantial interest must be filed before a commissioner takes "any action upon any matter which will affect his interest."

While these opinions are helpful, they fail to define one crucial concept: the statutory meaning of "any action." Our question is whether any of Tubbesing's actions qualify as "any action" under K.S.A. 75-4305.

K.S.A. 75-4301a(h) defines "acts" as: "[T]he exercise of power or authority or performance of any duty incident to public office or employment."

The statute does not limit the acts or actions to those that take place during a public meeting. K.S.A. 75-4305 does not prohibit discussions between an applicant and planning department employees who are evaluating the applicant's site plan. We recognize that subsequent to filing Midwest's application for site plan approval, it may have been necessary for Tubbesing to discuss the matter with the City's planning staff, which was evaluating the site plan. Such action is not prohibited.

When Midwest's proposal was being considered at the Commission meeting, Tubbesing stepped down from his Commission seat and argued for the proposal to the Commission on behalf of the applicant, Midwest. Tubbesing did not articulate any conflict of interest regarding the proposal. The transcript of the September 17, 2001, Commission meeting shows that Tubbesing was greeted with laughter when he announced his presence to the Commission as the applicant. Twice during his testimony, Tubbesing referred to the commissioners as "we."

In the absence of a disclosure of his interest in Midwest's proposal, Tubbesing should not have presented Midwest's site plan for approval. We are especially swayed by the transcript from the September 17, 2001, meeting, at which Tubbesing stated only that he was the general managing member of Midwest, but was clearly treated like one of the Commission's own.

A local government officer or employee who advocates approval of his or her project to the governmental body of which he or she is a member without identifying himself or herself as having a sub-

stantial interest in the project violates K.S.A. 75-4305. We find that Tubbesing did not abstain "from any action in regard to the matter" as required by K.S.A. 75-4305(b). The trial court erred when it found that Tubbesing's actions did not violate K.S.A. 75-4305. We remand the case to the trial court with directions to send it back to the Commission to redo the entire process since it was tainted from the very beginning. All future proceedings must be conducted without Tubbesing as long as he remains on the Commission.

### Commission Bylaws

Every member of the Commission is given a copy of its bylaws. This is done so that new members may become better oriented to the position. Even though the Commission bylaws were provided to Tubbesing by Chaffee, Tubbesing testified that he did not read them.

§ I.D. of the Commission bylaws states:

"All members including the Chairman shall have a vote and shall vote when present except that any member shall automatically disqualify themself from voting on any decision in which there might be a conflict of interest and should state the nature of that conflict for the record."

The trial court ruled that Tubbesing did not violate this provision of the bylaws because he did not vote on the proposal and he announced his interest from the floor. Tubbesing was only listed as a contact person on Midwest's site application. It is curious as to why the City's planning staff listed Tubbesing as the owner on their report to the Commission. On appeal, Dr. Dowling maintains that Tubbesing never stated the nature of his conflict for the record. Dr. Dowling contends that Tubbesing's failure to disclose his conflict of interest foreclosed Dr. Dowling's ability to take action to protect his interests.

The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 747, 27 P.3d 1 (2001).

The whole issue of ownership of this project is more than curious. Although the City's planning staff report lists Tubbesing as the owner of the site proposed for development, the site plan application listed Midwest as the owner. At the Council meeting, Cary Daniel stated that Quik Trip still owned the property.

Where a bylaw requires a governmental officer or employee to state the nature of his or her conflict for the record and does not do so, he or she violates the bylaws. Even though the ownership of the project is unclear, Tubbesing never stated the nature of his conflict for the record; therefore, he violated the Commission's bylaws. We reverse the trial court's decision that Tubbesing did not violate the Commission's bylaws. We remand the case to the trial court with directions to send it back to the Commission to redo the entire process since it was tainted from the very beginning. All future proceedings must be conducted without Tubbesing as long as he remains on the Commission.

## Due Process and Public Policy Violations

Dr. Dowling contends that the City's approval of Midwest's proposal was void as a matter of law because Dr. Dowling's due process rights were violated. Dr. Dowling argues that the lack of notice regarding Tubbesing's conflict of interest deprived him of a meaningful opportunity to be heard before the Commission on that issue.

Dr. Dowling also contends that the Commission's approval of Midwest's proposal should be voided because it violates public policy. Dr. Dowling argues that the circumstances giving rise to the approval of Midwest's proposal "tarnished the sanctity of the process."

These arguments were not raised to the trial court. Issues not raised before the trial court cannot be raised on appeal. *Board of Lincoln County Comm'rs v. Nielander,* 275 Kan. 257, 268, 62 P.3d 247 (2003). Dr. Dowling's due process and public policy violation issues are dismissed.

## Unreasonableness

Dr. Dowling argues that approving Midwest's proposal was un-

reasonable because the plan was inconsistent with the City's development guidelines. Dr. Dowling relies heavily on the fact that the proposed development would block the view of his building from 75th Street.

Reasonableness is the standard by which the trial court reviews a planning commission's decisions. Reasonableness is a question of law to be determined on the facts. On appeal, we apply the same standard as the trial court. There is a presumption that the planning commission acted reasonably, and this court may not substitute its judgment for that of the administrative body. *Rodrock Enterprises, L.P. v. City of Olathe*, 28 Kan. App. 2d 860, 863, 21 P.3d 598, *rev. denied* 271 Kan. 1037 (2001).

K.S.A. 12-747(a) authorizes a city planning commission to make a comprehensive plan for the development of a city. Shawnee adopted such a plan in 2001. One of the major objectives of the plan was to facilitate the development of high quality office space to encourage residents to work close to home, thereby increasing the City's daytime population.

Chaffee testified that the City's planning staff referred to the comprehensive plan when considering site proposals. Doug Allmon, the associate planner for the City's planning department, testified that Midwest's proposal lent itself towards the desired office building development. Allmon believed that Midwest's proposal was compatible with the existing structure within the Fenton Professional Plaza, complied with the zoning restrictions placed on the area, and also complied with the setback requirements on the plat for the lot. Midwest's proposal was reviewed by the City's fire, police, and engineering departments.

It is important to note that Lots 2, 3, and 4 currently owned and platted by Dr. Dowling were not platted to allow frontage on 75th Street. Dr. Dowling admitted that it never occurred to him he could have imposed a building restriction on Lot 1.

Dr. Dowling expressed concern that Midwest's proposal would destroy the visibility of his existing building, inconvenience his patients, and detract from potential new patients. However, Dr. Dowling admitted that his patients came by appointment and he did not conduct much walk-in business.

There is no evidence that Midwest's proposal violates zoning restrictions or Commission guidelines. The trial court correctly concluded that the decision of the Commission was reasonable given all of the circumstances of this case.

We affirm the trial court's ruling that Midwest's proposal did not violate zoning restrictions or Commission guidelines. We reverse the trial court's decision that Tubbesing did not violate the Commission's bylaws or K.S.A. 75-4305. We remand the case to the trial court with directions to send it back to the Commission to redo the entire process since it was tainted from the very beginning. All future proceedings must be conducted without Tubbesing as long as he remains on the Commission. We dismiss Dr. Dowling's issues of due process and public policy violations.

Affirmed in part, dismissed in part, reversed in part, and remanded with directions.

MALONE, J., concurring in part and dissenting in part: I concur that Kevin Tubbesing violated K.S.A. 75-4305 by addressing the Shawnee Planning Commission (Commission) on the site plan application of Midwest Holding, LLC (Midwest) without filing a written report of his conflict of interest. I disagree that Tubbesing violated the Commission's bylaws since he did not vote on Midwest's application. More importantly, I disagree that Tubbesing's transgression so "tainted" the ultimate decision of the City of Shawnee (City) that the parties must redo the entire process.

Shawnee City Council (Council) member Mark Boettcher witnessed the September 17, 2001, Commission meeting and believed the approval of Midwest's application was not "exactly kosher." He instituted a "call up" process, whereby the issue was placed on the Council's agenda on September 24, 2001, for a full hearing. According to Paul Chaffee, the head of the City's planning department, the call up process was extremely unusual, happening only three times during his 14-year tenure.

Dr. David Dowling was present at the Council meeting with his attorney, and he was provided the opportunity to fully air his grievances about the site plan application. Nevertheless, the Council voted not to deny Midwest's application. There is nothing in the

record on appeal to support any assertion that the Council's vote was somehow tainted by Tubbesing's initial violation.

Dr. Dowling then appealed the Council's decision to district court which considered the matter at an evidentiary hearing. The district court concluded that the City's decision to approve Midwest's application was reasonable and the majority opinion affirms this determination.

Whether the City's action was reasonable under all the circumstances should be the ultimate issue before the court. The district court's judgment that the City's action was reasonable is supported by substantial evidence. As the majority opinion notes, there was no evidence that Midwest's application violated zoning restrictions or Commission guidelines. Chaffee testified that the City's planning staff referred to the comprehensive plan for city development when it considered Midwest's site plan. Doug Allmon, the associate planner for the City's planning department, testified that Midwest's site plan was compatible with the existing structure within the Fenton Professional Plaza. Allmon also believed that the site plan complied with the zoning restrictions placed on the area and also complied with the setback requirements on the plat for the lot. Midwest's application was reviewed by the City's fire, police, and engineering departments and was approved by each department.

Dr. Dowling's only objection to Midwest's application was that it would block the view of his building from 75th Street. However, Dr. Dowling admitted that his patients came by appointment and he did not conduct much walk-in business. In weighing these factors, the Council acted reasonably in approving Midwest's site plan application, and the district court was correct in upholding this action.

Tubbesing's violation of K.S.A. 75-4305 is troubling and regrettable. If Dr. Dowling desires additional sanctions against Tubbesing, he is free to file a complaint before the Kansas Commission on Governmental Standards and Conduct. However, the district court's judgment upholding the City's action on the site plan application is supported by substantial evidence and should be affirmed.