The Honorable Dale A. Swenson State Representative, 97th District 3351 S. McComas Wichita, Kansas 67217
Dear Representative Swenson:
You request our opinion regarding the impact of the Kansas Supreme Court case Board of County Commissioners of the County of Lincoln, Kansasv. Neilander,[1] on collective bargaining between counties and employee organizations. You specifically ask that we address the following questions:
 "1. To what extent may a recognized employee organization and a board of county commissioners negotiate a memorandum of understanding setting forth terms and conditions of employment, disciplinary procedures, grievance procedures and protections from involuntary termination without proper cause for county employees working under the direct supervision of other elected county officials?
 "2. If the ultimate decision is to terminate, demote or otherwise discipline such employee is held by the elected county official other than the board of county commissioners, may the board of county commissioners through its personnel policies or negotiated memorandum of agreement afford county employees due process rights (the opportunity to be heard and to present evidence) after a decision to discipline the employee is effectuated by the elected official (e.g. post-termination or post-disciplinary hearing with the possibility of reinstatement or restitution)?"
The Nielander case involved a factual situation wherein the board of county commissioners sought an injunction to prohibit the county sheriff from employing a particular person as deputy sheriff. The Nielander Court held that the county sheriff, not the board of commissioners, had the authority to appoint, promote, or dismiss deputies. In reviewing the issue of who could lawfully make employment decisions impacting county sheriff's employees, the Court stated:
 "The sheriff is an independently elected officer whose office, duties, and authorities are established and delegated by the legislature. The sheriff is not a subordinate of the board of county commissioners and neither are the undersheriff or the sheriff's deputies and assistants. Rather, the sheriff is a state officer whose duties, powers, and obligations derive directly from the legislature and are coextensive with the county board. The undersheriff and the sheriff's deputies and assistants are subordinates of the office of sheriff. The board of county commissioners is the means by which the legislature finances the operation of the office of the sheriff. The board of county commissioners is not free to usurp the powers of the office of sheriff by controlling the hiring or firing of the deputies and assistants appointed by the sheriff."[2]
In examining the county commission's argument that K.S.A. 19-805(d) allowed the commission to establish personnel polices and control personnel matters within a county,[3] the Nielander Court concluded:
 "While personnel actions taken by sheriffs are `subject to' personnel policies, payment plans, collective bargaining agreements, and budgets established by boards of county commissioners, K.S.A. 19-805(d) does not give county commissioners the ability to supersede a sheriff's power to appoint, promote, demote, or dismiss his or her personnel."[4]
You point to dicta in Attorney General Opinions No. 2003-15 and 97-16
that recognizes the several statutes empowering county commissioners to adopt county employee policies. The Nielander Court's conclusions are entirely consistent with prior Attorney General Opinions discussing the personnel policies of a county commission and the impact of those policies upon the employees of other elected county officials.[5] We believe that the statutory authority discussed in these opinions allows a board of county commissioners to adopt general county employee personnel policies. However, such authority does not empower the county commissioners to initiate or make hiring or other individualized employee decisions that will impact a specific employee of another elected county official. Thus, although the authority vested in the sheriff and county commissioners may clash in situations involving a sheriff's decision to disregard the county commissioner's general employee policies, we find no direct conflict between our prior opinions and the Nielander case.
You also cite to K.S.A. 75-4321 et seq., the Kansas Public Employer-Employee Relations Act (PEERA), and ask how to read this Act in light of the Nielander case. The purpose of PEERA is to obligate public agencies, public employers and their representatives to enter into discussions to resolve grievances and disputes relating to employment conditions.[6] However, as noted in State Dpt. of Administration v.Public Employee Relations Board,[7] "[a]lthough PEERA has been in effect nearly 23 years, it has been the subject of few appellate court opinions and relatively little legislative revision. Fundamental questions concerning the nature of PEERA and the position it occupies in the scheme of public employer-employee relations in Kansas remain clouded. We have recognized that PEERA has a unique nature as a `hybrid' labor relations act, falling somewhere between a pure `meet and confer' act and a classic `collective bargaining' act."
Under K.S.A. 75-4322(a), "public employee" means "any person employed by any public agency, except those persons classed as supervisory employees, professional employees of school district . . . elected and management officials, and confidential employees." Under K.S.A. 75-4322(f), "public agency" or "public employer" means "every governmental subdivision, including any county, township, city, school district, special district, board, commission, or instrumentality or other similar unit whose governing body exercises similar governmental powers, and the state of Kansas and its state agencies." Thus, a county is a public employer and employees of the county are public employees, except as excluded by K.S.A. 75-4322(a).
Under the PEERA, the negotiations between the employer and employee are to be conducted by the "governing body."[8] In Attorney General Opinion No. 81-276, Attorney General Stephan opined that the board of county commissioners, not the sheriff, was the public employer for purposes of negotiating agreements entered into under the PEERA. In Attorney General Opinion No. 93-59, it was noted that a county attorney, like a sheriff, is an administrative officer and is not similar to a legislative body or policy board, and thus it was determined that the county attorney should not be considered a governing body for the purpose of this Act. Likewise, we believe the county commission is the appropriate entity to negotiate PEERA agreements with county sheriff's employees.
However, in Attorney General Opinion No. 93-59 it was further stated:
 "The negotiator for the public employer in this situation normally would be the chairman of the board of county commissioners unless the board of commissioners provides otherwise. We note that the board may choose the county attorney as an alternate or additional representative since the county attorney is the person charged with the responsibility of managing the office. . . . While we conclude that employees of the county attorney's office may fall under PEERA, this ability of employees to elect a representative who can then negotiate with the county on their behalf is illusory because the county attorney will not be bound by any collective bargaining agreement entered into between the board of county commissioners and the employee organization. . . . Consequently, unless the county attorney signs his or her name to the collective bargaining agreement, he or she is not obligated to honor it. This result may warrant reexamination by the legislature in order to fulfill PEERA's mandate and empower public employees." [9]
We are aware of no subsequent legislative amendments or case law that have altered the conclusions reached in Attorney General Opinion No.93-59.[10] The Nielander case further supports the position that a county sheriff retains much autonomy in making individual employee related decisions. Thus, while the board of county commissioners is not the entity that may make individual employee decisions, it is still allowed to conduct negotiations pursuant to the PEERA.[11]
Nevertheless, we believe that, despite the general personnel policy authority possessed by county commissioners and the negotiation authority vested in that body by the PEERA, in order for the terms of a general employee policy or a negotiated collective agreement to be binding upon a county sheriff with respect to individual hiring, firing, or discipline decisions, the sheriff should also agree to the policies or be a signatory to such an agreement. We agree that due process concerns exist, with regard to how current employee decisions are made. However, we note that the responsibility and power to provide protection of such rights does not fall solely upon the board of county commissioners.
It is our opinion that the ultimate decision to hire, terminate, demote or otherwise discipline a specific sheriff's employee remains vested in the county sheriff and may not be overturned by a board of county commissioners, in reliance upon personnel policies or a negotiated memorandum of agreement, unless such a procedure has not also been agreed to or signed by the county sheriff.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
PK:JLM:TMN:jm
[1] 275 Kan. 267 (2003).
[2] Nielander, 275 Kan. at 261-62.
[3] K.S.A. 19-805(d) states: "Any personnel action taken by the sheriff under this section shall be subject to the following: (1) Personnel policies and procedures established by the board of county commissioners for all county employees other than elected officials; (2) any pay plan established by the board of county commissioners for all county employees other than elected officials; (3) any applicable collective bargaining agreements or civil service system; and (4) the budget for the financing of the operation of the sheriff's office as approved by the board of county commissioners."
[4] Nielander, 275 Kan. at 267.
[5] See Attorney General Opinions No. 2003-15, 99-29, 97-16, 93-64,93-136, 93-122, 92-160, 92-158, 87-37, 87-14, 86-166, 84-53, 84-30, 82-85, 80-69, and 79-279.
[6] K.S.A. 75-4321(b).
[7] State Dept. of Admin. v. PERB, 257 Kan. 275, 281-82 (1995).
[8] Pursuant to K.S.A. 75-4322(g), "governing body" means "the legislative body, policy board or other authority of the public employer possessing legislative or policymaking responsibilities pursuant to the constitution or laws of this state."
[9] Emphasis added.
[10] The only post 1993 amendments made to K.S.A. 75-4321 et seq. were in K.S.A. 75-4323 (L. 1995, Ch. 241, § 23, concerning the PERB board and its powers) and K.S.A. 75-4332 (L. 1996, Ch. 129, § 7, amendments concerning certain information and making it confidential; did not concern authority of a county commission to approve agreements that control or override employee authority of other elected county officials). See also State Dept. of Admin v. PERB, 257 Kan. 275, 284
(1995).
[11] See also City of Wichita v. PERB, 259 Kan. 628 (1996), which held that a city which was subject to Public Employer-Employee Relations Act (PEERA) because it exercised sufficient control over the officers of a city airport authority so as to be considered their employer in those areas over which city exercised control, notwithstanding the fact that the airport was operated by city airport authority which was not subject to PEERA.