Dear Mr. Shelton:
As Smith County Attorney you request our opinion on issues surrounding the use of a county building, housing both emergency dispatch and jail facilities, and the persons properly involved in performing the duties associated with such services. You indicate that a dispute has arisen between the board of county commissioners and the county sheriff, relative to the proper handling of dispatch services and personnel.
Smith County operates a county law enforcement center, which is separate and apart from the county courthouse, but which houses the jail, offices, conference rooms, interview rooms, a kitchen, and a laundry room. For some time prior to the change resulting in this request, the sheriff's office operated and provided dispatch services for the Smith Center police, the various city and rural fire departments, emergency services, as well as the sheriff's department. The dispatch-communications services were operated from the Smith County Law Enforcement Center, and dispatchers also acted as "limited jailers," keeping watch on prisoners, preparing meals for prisoners, providing laundry services, etc.
The Board of County Commissioners for Smith County recently adopted a resolution setting up a communications-dispatch service, separate from and not controlled by the Smith County Sheriff. You enclose for our review copies of some of the documents related to the change.[1] We are also in receipt of a letter from the Sheriff, received by our office on January 31, 2006, wherein he outlines his concerns regarding the situation. Notably, he informs us that the dispatch system is located in a small room at the center of the Smith County jail, which also houses all of the electrical controls for locking down three steel doors that control access in or out of the jail. He also states that included in the dispatch area are fire alarm controls for the jail area, and all video and sound equipment for monitoring prisoners in the building or out in the yard. Thus, he expresses his concern about persons, not directly under his supervision, handling or monitoring the prisoners in the county jail.
From reviewing both your letter and the letter from the Sheriff, it appears that the questions that need to be resolved are as follows:
 • May a county commission establish a county dispatch service that is operated by anyone other than a county sheriff?
 • May a county building include both dispatch offices and a county jail? building that includes a county jail as well as other county offices required to be under the sole control of a county sheriff? sheriff refuse to admit dispatch personnel into a county owned building wherein the county conducts both jail and dispatch functions? sheriff refuse to allow other county personnel to handle jail matters or perform prisoner related duties? sheriff allow persons not hired by the sheriff to assist in handling jail or prisoner related duties?
 K.S.A. 19-212 sets forth the general authority of all boards of county commissioners:
 "The board of county commissioners of each county shall have the power, at any meeting:
 "First. To make such orders concerning the property belonging to the county as they may deem expedient,
including the establishing of regulations, by resolution, as to the use of such property and to prescribe penalties for violations thereof.
. . . .
 "Third. To purchase sites for and to build and keep in repair county buildings, and cause the same to be insured in the name of the county treasurer for the benefit of the county; and in case there are no county buildings, to provide suitable rooms for county purposes.
 "Fourth. To purchase an existing building and the site upon which it is located for the purpose of providing additional space for county offices and to remodel and equip the same.
. . . .
 "Sixth. To represent the county and have the care of the county property, and the management of the business and concerns of the county, in all cases where no other provision is made by law.
. . . .
 "Eleventh. To contract for the protection and promotion of the public health and welfare. . . ."[2]
K.S.A. 65-6114, empowers county commissioners to establish, operate and maintain a centralized emergency services communication system:
 "The governing body of any municipality may establish, operate and maintain a centralized emergency service communication system as a municipal function, within or without the boundaries of the municipality, for the purpose of furnishing those services required to establish, operate and maintain an emergency medical service or ambulance service, and such emergency communication system may include a county or city fire dispatch communication service for the purpose of providing a common communication network for all fire-fighting facilities, equipment and personnel. Such emergency communication system may provide for coordinated communication between all law enforcement agencies, ambulances, ambulance services and dispatchers, emergency receiving centers, fire dispatcher services, fire departments, health care institutions, medical practitioners, motor vehicle repair and towing services, and such other persons and service agencies as may be required."
Thus, a board of county commissioners is authorized to establish and fund a communication system that provides for coordinated communication between all law enforcement agencies and may allocate space in county-owned buildings in order to house persons associated with providing such services. We have found no statute or case law stating that such services may only be provided by a county sheriff or that it is illegal or inappropriate for such a communication center to be housed in the same building as the county jail.
K.S.A. 19-811 provides: "The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable." In addition, K.S.A. 19-1903 provides: "The sheriff of the county by himself or deputy shall keep the jail, and shall be responsible for the manner in which the same is kept. He shall keep separate rooms for the sexes, except where they are lawfully married. He shall supply proper bread, meat, drink and fuel for the prisoners." Thus, a county sheriff is ordinarily empowered to control the incarcerated occupants of a county jail and make sure the jail is operated safely.
Some sheriffs and county commissions have decided to move jail duties under a county correctional system.[3] However, unless such a resolution has been adopted by Smith County, pursuant to K.S.A. 19-101a and/or K.S.A. 12-3901 et seq., we believe that a county sheriff ordinarily remains the person in charge of decisions concerning how to properly run a county jail, or handle prisoners incarcerated in such a jail.[4] In carrying out the duties to keep and maintain a jail, and acting pursuant to K.S.A. 19-805, a sheriff may hire deputies or other employees to assist him, as long as there are sufficient moneys in the sheriff's budget to pay the salaries of such individuals.
A recent Kansas Supreme Court decision provides guidance concerning the authority of boards of county commissions over employees of a county sheriff.[5] The Nielander case involved a factual situation wherein the board of county commissioners sought an injunction to prohibit the county sheriff from employing a particular person as deputy sheriff. TheNielander Court held that, within budgetary limitations, the county sheriff, not the board of commissioners, had the authority to appoint, promote, or dismiss deputies. In reviewing the issue of who could lawfully make employment decisions impacting county sheriff's employees, the Court stated:
 "The sheriff is an independently elected officer whose office, duties, and authorities are established and delegated by the legislature. The sheriff is not a subordinate of the board of county commissioners and neither are the undersheriff or the sheriff's deputies and assistants. Rather, the sheriff is a state officer whose duties, powers, and obligations derive directly from the legislature and are coextensive with the county board. The undersheriff and the sheriff's deputies and assistants are subordinates of the office of sheriff. The board of county commissioners is the means by which the legislature finances the operation of the office of the sheriff. The board of county commissioners is not free to usurp the powers of the office of sheriff by controlling the hiring or firing of the deputies and assistants appointed by the sheriff."[6]
Thus, the county sheriff retains the authority to hire and supervise those persons assisting him in carrying out the duties of his or her office. As discussed above, there are statutes vesting county sheriffs with power to control and care for prisoners housed in the county jail. Therefore, while jail duties may be delegated to others, the sheriff remains the individual with control over for such matters.
However, unless the parties choose not to cooperate, we do not believe that the duties and powers of the county commission and the county sheriff are necessarily in conflict in such situations. Rather, both the board of county commissioners and the sheriff possess authority enabling them to better serve and protect the general public.
As discussed in Cole v. City of Garnett,[7] the county commissioners are the general agents of the county and have general control and management of county property. However, when specific property is essential to another county official's ability to carry out required duties, the county commissioners' authority may be more limited.[8] Under Kansas law, the county sheriff's position is a creature of state law, one of many elected positions created to carry out the various duties of county government. These elected positions are not subordinate to one another, they are equal positions, each empowered with the task of running one of the departments of the county government.[9]
Because a county sheriff is ordinarily charged with control and duties connected with prisoners in a county jail, the sheriff may necessarily insist upon retaining some degree of actual supervisory authority over the actions of persons who will be performing duties associated with the jail or its prisoners because of concerns over liability for actions taken by persons with access to the jail or its prisoners. However, we note that under Blume v. Meneley,[10] liability in such a situation would not be individualized to the county sheriff. Rather, even though the sheriff may remain the decision-maker for purposes of jail decisions, and the county commissioners the decision makers on other matters, it would be the county, not the individual officials, that would be the most likely to be named or considered a proper party in a liability law suit.
We have found no case law or statute prohibiting a sheriff from sharing his or her jail employees with other county offices, nor on the other hand requiring him to use the same personnel. Such decisions appear to be discretionary. If the sheriff does not believe current dispatch personnel are properly trained or sufficiently able to properly perform functions associated with the jail, it is within his power to hire and appoint new persons to assist him with jail functions, as long as he has sufficient budgetary resources. He is not required, by law, to utilize persons hired by the county commissioners to perform these functions. Likewise, the board of county commissioners is not required by law to provide additional funding to a county sheriff in order to hire new jailers simply because the current employees are no longer controlled solely by the sheriff's office. How to best resolve such situations appears to rest upon budgetary and factual considerations.
With regard to actual access to the dispatch facility by persons not hired or in some way controlled by the county sheriff, we can find no case law or statute giving the county sheriff authority to prohibit county personnel from entering a county-owned building, as long as they are doing so in connection with carrying out their assigned duties. Rather, this appears to be a policy dispute that calls for reasonable cooperation in exercising discretionary authority.[11]
1. May a county commission establish a county dispatch service that is operated by anyone other than a county sheriff? Yes.
 • May a county building include both dispatch offices and a county jail? Yes. STYLE="font-size: 9pt"Is a county building that includes a county jail as well as other county offices required to be under the sole control of a county sheriff? No. STYLE="font-size: 9pt"May a county sheriff refuse to admit dispatch personnel into a county owned building wherein the county conducts both jail and dispatch functions? No. STYLE="font-size: 9pt"May a county sheriff refuse to allow other county personnel to handle jail matters or perform prisoner related duties? Yes. As long as the sheriff remains the official in charge of the jail, he is not required to utilize county employees not subject to his control or supervision in carrying out such functions or duties. STYLE="font-size: 9pt"May a county sheriff allow persons not hired by the sheriff to assist in handling jail or prisoner related duties? Yes, such delegation of authority is permissible, but discretionary on the part of the sheriff.
It is our opinion that the Board of county commissioners is authorized to create and control a county emergency communication system. Such a system may be operated out of the same building that houses the county jail. A county sheriff does not have the authority to bar access to county emergency communication employees whose job duties require they have access to a county building housing both the communication system and the county jail.
Unless the county jail functions have been transferred from the county sheriff to a county corrections department, the county sheriff remains the individual in charge of housing and caring for county prisoners. As such, the county sheriff is not required to utilize county emergency communication system employees to assist with jail related functions. If the county sheriff has sufficient money budgeted for such purposes, he may hire other persons to assist him with maintaining and operating a county jail. However, the county sheriff, acting in concert with the county commission if the employees would serve both, is not prohibited from using county emergency communication employees to assist with operating the county jail.
Sincerely,
 Phill Kline Attorney General
 Theresa Marcel Bush Assistant Attorney General
PK:JLM:TMB:jm
[1] These include: Letters to various law enforcement entities (including the Kansas Highway Patrol and the Smith County Sheriff) informing them of the change; County Resolution No. 05-17, relying upon K.S.A. 19-212 in establishing a new county department and budget, transferring all listed property and equipment and establishing the Smith County Communications Department as of January 1, 2006; County Resolution No. 06-01, reiterating the reasons and intentions behind the change in question; January 2006 letters of invitation to individuals chosen to serve on the Communication Board for Smith County; and a January 17, 2006 letter from the Smith County Commissioners to the Smith County Sheriff, offering a solution to the issues surrounding which personnel would perform specific duties, and the sheriff's response stating that he did not intend to allow anyone not employed by him to work in the jail and with prisoners.
[2] Emphasis added.
[3] See Attorney General Opinion No. 96-69 (a sheriff is required to transport prisoners that are housed within the county jail to medical appointments. However, a county resolution that transfers the operation of a jail from the sheriff to a county department of corrections may remove that responsibility from the sheriff).
[4] See Attorney General Opinion No. 95-70 (generally, a district court may not intrude upon the sheriff's statutory duty to operate the jail by issuing an order that precludes the sheriff from transferring a defendant to another jail to alleviate overcrowding).
[5] Board of County Commissioners of the County of Lincoln,Kansas v. Nielander, 275 Kan. 257, 2003).
[6] Id. at 261-62. See also Attorney General Opinion No.2004-13.
[7] 180 Kan. 405 (1956).
[8] See Attorney General Opinion No. 83-77 (while the board of county commissioners has a general power to control and regulate the use of county property, such authority may not be utilized to restrict the jurisdiction or impede the statutory duties of the elected sheriff or his deputies).
[9] Blume v. Meneley, 283 F.Supp.2d 1171 (2003) ("[u]nder Kansas law, a county sheriff is not a subordinate of the board of county commissioners and neither are the undersheriff or the sheriff's deputies and assistants; rather, the sheriff is a state officer whose duties, powers, and obligations derive directly from the legislature and are coextensive with the county board of commissioners").
[10] Supra.
[11] See Attorney General Opinions No. 94-115, 87-37, 86-166, 84-53, 80-69.