No. 55,574

STATE OF KANSAS, *ex rel.* ROBERT T. STEPHAN; WASHBURN UNIVERSITY OF TOPEKA; ALLEN COUNTY COMMUNITY COLLEGE, *et al., Appellees,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LYON COUNTY, *Appellant.*

(676 P.2d 134)

Opinion filed January 13, 1984.

*Jay W. Vander Velde,* of Atherton, Sanderson & Vander Velde, of Emporia, argued the cause and was on the briefs for appellant.

*Rodney J. Bieker,* assistant attorney general, argued the cause, and *Dan Biles,* assistant attorney general and *Robert T. Stephan,* attorney general, were with him on the brief for appellee State of Kansas.

*Kenneth P. Hackler,* of Topeka, argued the cause and was on the brief for appellee Washburn University of Topeka.

*Robert V. Talkington,* of Conderman & Talkington, of Iola, argued the cause and was on the brief for appellees Allen County Community College, *et al.*

The opinion of the court was delivered by

MILLER, J.: This is an action in the nature of quo warranto, brought by the attorney general against the Board of County Commissioners of Lyon County to contest the validity of two charter resolutions enacted by the Board. The resolutions exempted Lyon County from paying, as required by certain statutes, out-district tuition to Kansas community colleges and municipal universities. The trial court held the resolutions unconstitutional, enjoined the implementation of the charter resolutions, and ordered the Board to continue paying out-district tuition as provided by law. The principal issues to be resolved are whether this court should consider a law enacted while this case was on appeal; whether that statute is controlling; and whether the statutes requiring the payment of out-district tuition are constitutional.

To put this controversy in proper perspective, we will first review the constitutional and statutory provisions applicable, together with the procedural history of this action. Article 6 of the Constitution of Kansas deals with the subject of education. It provides in applicable part as follows:

"§ 1. *Schools and related institutions and activities.* The legislature shall provide for intellectual, educational, vocational and scientific improvement by establishing and maintaining public schools, educational institutions and related activities which may be organized and changed in such manner as may be provided by law.

"§ 2. *State board of education and state board of regents.* (a) The legislature shall provide for a state board of education which shall have general supervision of  .  .  .   educational institutions and all the educational interests of the state, except educational functions delegated by law to the state board of regents.  .  .  .

.  .  .  .

"§ 6. *Finance.* (a) The legislature may levy a permanent tax for the use and benefit of state institutions of higher education and apportion among and appropriate the same to the several institutions, which levy, apportionment and appropriation shall continue until changed by statute. Further appropriation and other provision for finance of institutions of higher education may be made by the legislature.

"(b) The legislature shall make suitable provision for finance of the educational interests of the state."

Acting under authority of these constitutional provisions over sixty years ago, the Kansas Legislature authorized the establishment of junior colleges having a two-year course of post-high school study. See R.S. 1923, 72-3301 *et seq.* "Junior colleges" and "community junior colleges" became "community colleges" pursuant to a statute enacted in 1980. See K.S.A. 71-120. These community colleges generally have as a tax base a taxing district consisting of one county or less, and the board of trustees of each community college is authorized to levy a tax on the taxable tangible property of the community college district. K.S.A. 71-204. In order to provide additional financial assistance to the community colleges, the legislature authorized each community college, under certain circumstances, to charge out-district tuition for each student attending the college whose residence is outside the community college district. Out-district tuition is paid by the board of county commissioners of the county of residence of the students who live outside of the community college district. See K.S.A. 1982 Supp. 71-301.

Washburn University of Topeka, Kansas, is a municipal university. See K.S.A. 13-13a03 *et seq.* Its taxing district was originally co-extensive with the limits of the city of Topeka. Later, the legislature authorized extension of the taxing district to include all of Shawnee County. See K.S.A. 13-13a24. Before 1982, there was no statutory authorization for Washburn University to charge or receive out-district tuition from other counties, although students attended it from various counties of the state.

Laws of Kansas 1982, chapter 282, became effective upon publication on May 20, 1982. This law spawned the charter resolutions enacted by the Board of County Commissioners of Lyon County, resulting in this litigation. Chapter 282 is entitled:

"An Act concerning certain institutions of postsecondary education; increasing the rate of out-district tuition charged to counties by community colleges; providing for increases in state aid to community colleges and municipal universities; authorizing the charging of out-district tuition by municipal universities and requiring the levy of taxes for payment thereof by taxing subdivisions; relating to the provision of instruction by community colleges and municipal universities under agreements with state agencies; amending K.S.A. 71-602, 71-607 and 72-6503 and K.S.A. 1981 Supp. 71-301, and repealing the existing sections; also repealing K.S.A. 71-207, 71-208, 71-209, 71-303 and 71-307."

Chapter 282 is lengthy and need not be set forth in full; instead, we provide the following summary of its sections.

Section 1 amends K.S.A. 1981 Supp. 71-301 and provides for and limits the charging of student tuition and out-district tuition by community colleges, and requires the boards of county commissioners to pay out-district tuition.

Section 2 amends K.S.A. 71-602 and prescribes to the state board of education the method for calculating credit hour state aid to be given community colleges.

Section 3 amends K.S.A. 71-607 and prescribes to the state board of education the method for calculating out-district state aid payments to be made to community colleges.

Section 4 amends K.S.A. 72-6503 and prescribes to the state board of education the method for calculating payments to be made to Washburn University from the municipal university fund of the state treasury.

Section 5 defines certain terms, including "municipal university district" and "taxing subdivision." This section is now K.S.A. 13-13a25.

Section 6 provides for, and limits, the charging of out-district tuition by any municipal university, commencing with the spring semester of 1983; and it requires boards of county commissioners and other "boards of levy" to pay such charges. This section is now K.S.A. 13-13a26.

Section 7 concerns the residence of students for the purposes of determining out-district tuition charges and out-district state aid entitlement. This section is now K.S.A. 13-13a27.

Section 8 entitles a municipal university to receive out-district state aid payments and prescribes to the state board of education the method for calculating these state aid payments. This section is now K.S.A. 13-13a28.

Section 9 specifies times at which, and persons and agencies by whom, a determination of credit hours of duly enrolled out-district students of the municipal university shall be made. (The number of credit hours of duly enrolled out-district students is one of the factors that is used to calculate both out-district tuition and out-district state aid. See K.S.A. 13-13a26.) This section is now K.S.A. 13-13a29.

Section 10 imposes duties and places restrictions upon the state board of education regarding distribution of out-district state aid entitlements of the municipal university. This section is now K.S.A. 13-13a30.

Section 11 imposes a limitation regarding the students for whom a municipal university may charge out-district tuition. This section is now K.S.A. 13-13a31.

Section 12 imposes another limitation regarding the students for whom a community college may charge out-district tuition. It also provides for an increase in out-district state aid entitlements of community colleges, if certain facts exist. This section is now K.S.A. 13-13a32.

Section 13 imposes duties upon the state board of education regarding matters necessary to determine out-district tuition charges that may be made by a municipal university and the amount of out-district state aid that the municipal university is entitled to receive. This section is now K.S.A. 13-13a33.

Section 14 places yet another restriction on the amount of out-district tuition a municipal university can charge and on the amount of out-district state aid that the municipal university is entitled to receive. This section is now K.S.A. 13-13a34.

Section 15 authorizes the governing body of any community college or municipal university and any state agency to enter into agreements for the provision of instruction at the community college or municipal university, or off the campus thereof. It prescribes how the amount to be paid by the state agency for such instruction is to be determined and limits that amount to appropriations of the state agency made by the legislature. It also provides that no credit hour state aid entitlement and no out-district state aid entitlement shall be based upon, and no tuition shall be charged or collected for, any subject, course or program taught under an agreement with a state agency. This section is now K.S.A. 1982 Supp. 75-3099.

Section 16 repeals various statutes relating to the financial affairs of community colleges and Washburn University.

Section 17 prescribes the effective date of the act.

To attempt to exempt itself from the above summarized provisions, Lyon County invoked its home rule powers. Article 12, section 5, of the Constitution of Kansas, commonly referred to as the home rule amendment, empowers cities to determine local affairs and government. It does not, however, provide for *county* home rule. This is provided by statute, K.S.A. 19-101 *et seq.*, as amended. The home rule powers of a county are thus subject to

determination and limitation by the legislature and do not ema-
nate from the constitution. County home rule powers are to be
exercised by charter resolutions, as provided by K.S.A. 19-101b.
We discussed the history and application of the county home
rule act thoroughly in *Missouri Pacific Railroad v. Board of
Greeley County Comm'rs*, 231 Kan. 225, 643 P.2d 188 (1982).

On September 23, 1982, the Board of County Commissioners
of Lyon County, Kansas, enacted charter resolutions Nos. 18 and
19. Resolution No. 18 exempts Lyon County from various acts of
the legislature, including K.S.A. 1981 Supp. 71-301, as amended
by 1982 Session Laws, chapter 282, relating to the payment of
out-district tuition to community colleges. Resolution No. 19
exempts the county from other acts of the legislature, including
Laws of 1982, chapter 282, § 6, now K.S.A. 13-13a26, relating to
the payment of out-district tuition to municipal universities.
Both resolutions were unanimously adopted and both were to
take effect sixty days after final publication unless a petition of
electors demanding that the matter be submitted to popular vote
was filed.

On October 25, 1982, the attorney general commenced this
action, seeking a declaratory judgment that the charter resolu-
tions were illegal, an injunction to prevent implementation of
the resolutions, and relief in the form of quo warranto. Washburn
University, the only municipal university in Kansas, and the
nineteen community colleges were permitted to intervene as
plaintiffs. The board answered and counterclaimed, alleging (1)
that Laws of Kansas 1982, chapter 282, is unconstitutional be-
cause it contains more than one subject; (2) that Kansas commu-
nity colleges are operating in violation of "public policy" and
should be enjoined from collecting out-district tuition; and (3)
that the Kansas community colleges must refund out-district
tuition paid by Lyon County. The plaintiffs then replied, deny-
ing that defendant is entitled to any relief on its counterclaim.

The matter was tried to the court on January 7, 1983. The trial
judge made extensive findings of fact and conclusions of law, and
entered judgment generally in favor of the plaintiffs and against
the Board. The court found that charter resolutions Nos. 18 and
19 are illegal and unconstitutional, and that the Board exceeded
its legal authority by adopting them. It enjoined the Board from
implementing any of the provisions of the charter resolutions,

and it ordered the Board to continue paying out-district tuition as provided by law. The court dismissed the counterclaims and denied the defendant the relief it sought. The Board appeals from the trial court's judgment.

While this matter was pending on appeal, the legislature enacted Laws of Kansas 1983, chapter 92, effective July 1, 1983. Section 1 of that act amends one of the county home rule statutes, K.S.A. 1982 Supp. 19-101a, and so far as is here pertinent reads as follows.

"(a) The board of county commissioners may transact all county business and perform all powers of local legislation and administration it deems appropriate, subject only to the following limitations, restrictions or prohibitions . . . .
. . . . .

"(16) Counties may not exempt from or effect changes in K.S.A. 13-13a26, and amendments thereto. Any charter resolution adopted by a county, prior to the effective date of this act, exempting from or effecting changes in K.S.A. 13-13a26, and amendments thereto, is null and void.

"(17) Counties may not exempt from or effect changes in K.S.A. 71-301, and amendments thereto. Any charter resolution adopted by a county, prior to the effective date of this act, exempting from or effecting changes in K.S.A. 71-301, and amendments thereto, is null and void."

K.S.A. 13-13a26, referred to in section 16, deals with out-district tuition to municipal universities. K.S.A. 71-301, referred to in section 17, deals with out-district tuition to community colleges.

This brings us to the first issue, whether chapter 92 of the Laws of Kansas 1983, quoted above, renders this case moot. The defendant Board contends that the enactment does not nullify the charter resolutions and in support of this conclusion makes three arguments: (1) The trial court did not have the opportunity to consider the new statutes; (2) the new statute itself is special legislation and thus violates article 2, section 17, of the Kansas Constitution; and (3) the statutes referred to in the new legislation, K.S.A. 13-13a26 and K.S.A. 71-301 and amendments thereto, enacted as a part of Laws of Kansas 1982, chapter 282, are themselves unconstitutional.

It is true that ordinarily this court will not consider an issue not raised in the trial court. This does not, however, prevent us from considering a pertinent statute enacted by the legislature after a trial court's judgment is entered. Statutory construction is a matter of law and if the statute is controlling it would not benefit the parties or the judicial system to send the matter back to the

trial court merely for consideration of the newly enacted statute. The new statute is the law presently in effect. When called upon to consider legislative enactments which follow trial court rulings, this court has not hesitated. We did so in *Manzanares v. Bell,* 214 Kan. 589, 522 P.2d 1291 (1974); *Dairy Belle, Inc. v. Freeland,* 175 Kan. 344, 264 P.2d 894 (1953); and *Ash v. Gibson,* 146 Kan. 756, 74 P.2d 136 (1937). We will therefore proceed to consider K.S.A. 19-101a as amended in 1983.

First, we must determine whether K.S.A. 1983 Supp 19-101a is constitutional. Article 2, section 17, of the Kansas Constitution was amended on November 5, 1974, when the proposed revision of that article was adopted by the people of Kansas at the general election. Section 17 in its present form provides that: "All laws of a general nature shall have a uniform operation throughout the state . . . ." Deleted from the constitution but contained in earlier versions of section 17 was the phrase, "and in all cases where a general law can be made applicable, no special law shall be enacted." Justice Prager discussed the history of article 2, section 17, and fully described its present-day scope in *Stephens v. Snyder Clinic Ass'n,* 230 Kan. 115, 123-127, 631 P.2d 222 (1981). Article 2, section 17, of our constitution no longer contains the special law prohibition. *Ullrich v. Board of Thomas County Comm'rs,* 234 Kan. 782, 676 P.2d 127 (1983). The new enactment may have been engendered by the Lyon County action, but it operates uniformly throughout the state: It applies to all boards of county commissioners, and it forbids any county from exempting itself from either the municipal or the community college out-district tuition act. The new act does not violate our present article 2, section 17.

Next, defendant contends that K.S.A. 13-13a26 and K.S.A. 1982 Supp. 71-301 are unconstitutional because chapter 282 violates article 2, section 16, of the constitution, which provides that "[n]o bill shall contain more than one subject . . . ." As our summary above shows, the sections of the bill are concerned with a single subject—the financing of present or future community colleges and municipal universities. It does not deal with those state institutions of higher learning which are under the board of regents. On the contrary, it deals only with those institutions of post-high school education whose primary support comes not from the entire state, but from smaller taxing subdivi-

sions, *i.e.*, cities or counties. Defendant's argument is primarily based on the contention that chapter 282, section 15 treats the right of community colleges or municipal universities to enter into agreements with state agencies for the providing of instruction and for the determination of the amount to be paid for such instruction, and that the section's further direction that no out-district tuition shall be based upon instruction provided under an agreement with a state agency is "merely peripheral." This is not so; the legislature was simply authorizing state agencies to enter into contracts to pay for instruction in certain cases. Once these contracts are authorized, the question of whether the student's county of residence is still liable for out-district tuition necessarily arises. The legislature answered the question: When the state is making a direct contribution to the post-secondary institution, the student's county of residence is not liable for out-district tuition. The entire subject matter of section 15 deals, as does the rest of the act, with the matter of financing community colleges and municipal universities. The act does not offend article 2, section 16.

Defendant also contends that the fact that the legislature consolidated several bills into chapter 282 at the close of the legislative session is somehow suspicious. There is absolutely no indication, however, that a matter of legislative merit was tied to an unworthy matter or that matters having no relation to each other were intermixed. No legislative history or extrinsic evidence of how the act evolved is necessary or relevant where the act contains no unrelated or unworthy matters and is clear on its face. We find no merit to defendant's attack on chapter 282 of the Laws of 1982, and we hold that chapter to be constitutional.

As we noted in *Nitchals v. Williams*, 225 Kan. 285, Syl. ¶ 1, 590 P.2d 582 (1979), it is a general rule of statutory construction that a statute will operate prospectively unless its language clearly indicates that the legislature intended that the statute operate retrospectively. Such is the case here. The legislature clearly intended that chapter 92 of the Laws of Kansas for 1983, and particularly section 1 thereof, operate retrospectively. The 1983 act nullifies Lyon County charter resolutions Nos. 18 and 19, and any similar resolutions which may have been enacted by other county boards. As we noted earlier, county home rule has no constitutional basis but is dependent upon legislation. The leg-

islature has spoken and has specifically denied to counties the authority to avoid paying the out-district tuition required by K.S.A. 13-13a26 and K.S.A. 1982 Supp. 71-301. We know of no reason why the legislature cannot so limit county home rule. Chapter 92 of the Laws of 1983 is, in our opinion, a valid enactment.

Defendant's challenge to K.S.A. 13-13a26 and K.S.A. 1982 Supp. 71-301 is based upon the fact that as presently enacted they were a part of chapter 282 of the 1982 laws, and defendant contends that the entire chapter is unconstitutional. It makes no separate claim as to the constitutional invalidity of K.S.A. 13-13a26 and K.S.A. 1982 Supp. 71-301. We have dealt with defendant's claim of the constitutional invalidity of the 1982 act and find the argument to be without merit.

Finally, defendant claims that the community colleges are acting outside the public policy of the state in that they have exceeded the powers granted them by the legislature or are not complying with expressed legislative goals. The legislature has provided by statute, K.S.A. 71-802, that the state board of education may take action any time it finds that a community college has failed to comply with the community college act, any other statute, or any rule or regulation adopted by the state board. The action of the state board in granting, denying or withdrawing approval of a community college is expressly made subject to legislative review.

We conclude that the county cannot challenge the community colleges' compliance with the law in the fashion here asserted, and that the county does not have standing to raise this issue. The appropriate avenue of challenge, if any, is through the state board of education. We see no reason to permit every county required to pay out-district tuition to challenge the manner of operation and degree of compliance with law of each of the community colleges. This would unnecessarily invite litigation when such claims should be heard by the central authority designated by the legislature to hear them.

Defendant raises numerous other issues but none are dispositive of this appeal. In light of the conclusions announced herein, the trial court did not err. The judgment is affirmed.