No. 89,822

JOHN DAVID, JOE L. DAWSON, ROBERT and SHIRLEY SPROUL, and
THE KANSAS LIVESTOCK ASSOCIATION, *Appellees,* v. BOARD OF
COMMISSIONERS OF NORTON COUNTY, KANSAS, *Appellant.*

(89 P.3d 893)

Opinion filed May 14, 2004.

*James M. Kaup,* of Law Office of James M. Kaup, P.A., of Topeka, argued the cause, and *Mary F. Carson,* of Mary F. Carson, P.A., of Lawrence, and *R. Douglas Sebelius,* of Sebelius & Griffiths, L.L.P., of Norton, were with him on the briefs for appellant.

*Dennis L. Gillen,* of Depew and Gillen, L.L.C., of Wichita, argued the cause, and *Nicholas S. Daily,* of the same firm, was with him on the brief for appellees.

*Michael M. Shultz,* of Lawrence, was on the brief for *amicus curiae* Kansas Association of Counties.

*Charles S. Arthur, III,* and *Michael D. Irvin,* of Manhattan, were on the brief for *amicus curiae* Kansas Farm Bureau.

The opinion of the court was delivered by

BEIER, J.: This appeal requires us to decide whether Norton County (County) lawfully employed its home rule power to pass an ordinary resolution regulating confined animal feeding operations (CAFOs) more strictly than they are regulated by the State.

The Board of County Commissioners of Norton County passed Home Rule Resolution 2002-06, attempting to regulate CAFOs within the County's borders. The individual plaintiffs are CAFO operators affected by the resolution. Before the resolution's passage, each plaintiff had received a permit from the State that would have allowed expanded operations. With the adoption of the resolution, expansion was prevented. The individual plaintiffs and the Kansas Livestock Association filed this declaratory judgment action to strike down the resolution.

The district judge held that the resolution exceeded the County's home rule authority and that the State had manifested a clear intent to preempt the field of CAFO regulation. The district judge relied in part on the language of K.S.A. 2003 Supp. 19-101a(a)(30) and noted that the legislature "reserve[d] exclusive jurisdiction in a particular area by enacting a law of uniform application throughout the [S]tate, which manifest[ed] a clear intent to preempt the field." The district judge also held, in the alternative, that the resolution's provisions regarding separation distances constituted an unlawful attempt to engage in zoning of agricultural land.

The County now appeals.

To the extent the district judge relied on K.S.A. 2003 Supp. 19-101a(a)(30) or other statutes, our review of his decision is de novo. "Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate court is not bound by the district court's interpretation of a statute." *Williamson v. City of*

*Hays*, 275 Kan. 300, 305, 64 P.3d 364 (2003). We also have plenary or de novo review of preemption questions, which are questions of law. *Doty v. Frontier Communications, Inc.*, 272 Kan. 880, 888, 36 P.3d 250 (2001); *Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan. App. 2d 95, 99, 864 P.2d 744 (1993).

Kansas counties derive all of their home rule authority from a statutory scheme originally enacted in 1974. See K.S.A. 19-101 *et seq.*

"Home rule powers are those granted . . . by legislative act to units of local government to transact local business and perform such local and administrative duties as these local units may deem appropriate . . . . Counties in Kansas are now empowered to transact all county business . . . subject, however, to the restrictions and prohibitions set forth in K.S.A. 2001 Supp. 19-101a." *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, Syl. ¶ 2, 62 P.3d 247 (2003).

See also *State ex rel. Stephan v. Board of Lyon County Comm'rs*, 234 Kan. 732, Syl. ¶ 6, 676 P.2d 134 (1984) (Counties have no constitutional basis for home rule; authority dependent upon legislation). Unlike city home rule, county home rule is not provided for in the Kansas Constitution. See Kan. Const. art. 12, § 5 (city home rule provision). However, we recognize that "Kansas county home rule powers are to be liberally construed for the purpose of giving counties the largest measure of self-government." *Board of Trego County Comm'rs v. Kansas Dept. of Revenue*, 261 Kan. 927, Syl. ¶ 3, 933 P.2d 691 (1997); see K.S.A. 19-101c (county home rule powers to be liberally construed).

The portions of K.S.A. 2003 Supp. 19-101a we regard as influential in this appeal read:

"(a) The board of county commissioners may transact all county business and perform all powers of local legislation and administration it deems appropriate, subject only to the following limitations, restrictions or prohibitions:

   . . . .

(30) Counties may not exempt from or effect changes in K.S.A. 2-3302, 2-3305, 2-3307, 2-3318, 17-5904, 17-5908, 47-1219, 65-171d, 65-1,178 through 65-1,199 or K.S.A. 2003 Supp. 17-5909, and amendments thereto.

   . . . .

"(b) Counties shall apply the powers of local legislation granted in subsection (a) by resolution of the board of county commissioners. If no statutory authority

exists for such local legislation other than that set forth in subsection (a) and the local legislation proposed under the authority of such subsection is not contrary to any act of the legislature, such local legislation shall become effective upon passage of a resolution of the board and publication in the official county newspaper. If the legislation proposed by the board under authority of subsection (a) is contrary to an act of the legislature which is applicable to the particular county but not uniformly applicable to all counties, such legislation shall become effective by passage of a charter resolution in the manner provided in K.S.A. 19-101b, and amendments thereto."

What is now subsection (a)(30) of 19-101a was first added to the county home rule statutes in 1998 (as subsection [a][28]), when the legislature passed Substitute for House Bill 2950. See L. 1998, ch. 143, sec. 39. That bill provided for comprehensive state regulation of CAFOs, including the subjects dealt with in the County's Home Rule Resolution 2002-06. In 1999, the legislature amended 19-101a to include subsection (a)(30) in its current form, as previously quoted. See L. 1999, ch. 146, sec. 4.

Several other subsections of 19-101a(a) use the "may not exempt from or effect changes in" language selected by the legislature for subsection (a)(30). See, *e.g.*, K.S.A. 2003 Supp. 19-101a(a)(9), (12), (14) to (21), (23) to (27), and (29) to (32). Several other subsections use alternate wording. For example, subsection (a)(3) states: "Counties may not affect the courts located therein." Subsection (a)(6) says: "Counties may not legislate on social welfare . . . ." Subsection (a)(11) says: "Counties shall have no power under this section to exempt from" certain statutes.

These wording differences among the subsections of K.S.A. 2003 Supp. 19-101a(a) are the basis for the County's first argument on appeal. It asserts that subsection (a)(30) was designed only to prevent counties from chartering out from under the state statutes governing CAFOs through K.S.A. 19-101b, not to prevent them from concurrently regulating CAFOs more strictly than the State through the passage of ordinary resolutions under K.S.A. 2003 Supp. 19-101a(b). In the County's view, if the legislature had wanted counties also to be unable to pass ordinary resolutions under 19-101a(b), it would have worded subsection (a)(30) as a clear prohibition, as it did with subsections (a)(3), (6), and (11), rather

than using the word "exempt," which also is used in K.S.A. 19-101b.

The County also argues that its resolution is merely supplemental to, not in conflict with, state regulation of CAFOs. In essence, according to the County, the State must have already *expressly* permitted something in order for a county resolution prohibiting the same thing to cause a conflict. The County asserts that its home rule resolution neither exempts it from or effects changes in state law in violation of subsection (a)(30) nor qualifies as "contrary to any act of the legislature" in violation of K.S.A. 2003 Supp. 19-101a(b). The resolution merely prohibits activities that had been *implicitly* permitted by the State, the County argues.

These arguments are counterintuitive. In addition, they are weakened by the County's reliance on city, rather than county, home rule cases. It is true that Kansas cases examining city home rule have held no conflict was created when a city ordinance was merely more restrictive or demanding than a state statute, see *City of Wichita v. Hackett*, 275 Kan. 848, 851, 69 P.3d 621 (2003) (city ordinance prohibiting driving bicycle while intoxicated upheld); *Garten Enterprises, Inc. v. City of Kansas City*, 219 Kan. 620, 625-26, 549 P.2d 864 (1976) (no conflict between city ordinance regulating hours of alcohol consumption, club closings and state Liquor Control Act, Private Club Act); *City of Junction City v. Lee*, 216 Kan. 495, 502-04, 532 P.2d 1292 (1975) (city ordinance forbidding carrying weapon not preempted by state statute on concealed weapons), but these cases do not control in the county home rule arena.

We have articulated the following standard for when a conflict exists between a county enactment and a state statute: "The primary method for determining whether an ordinance or resolution of a county is inconsistent with a state statute is to see whether the local law prohibits what the state law permits or the state law prohibits what the local law permits." *Trego County*, 261 Kan. 927, Syl. ¶ 5; see *Missouri Pacific Railroad v. Board of Greeley County Comm'rs*, 231 Kan. 225, 227, 643 P.2d 188 (1982).

This court has previously decided nine county home rule cases governed by the 1974 legislation or amendments thereto: *General*

*Building Contr., LLC v. Board of Shawnee County Comm'rs,* 275 Kan. 525, 66 P.3d 873 (2003); *Nielander,* 275 Kan. 257; *Trego County,* 261 Kan. 927; *Dillon Stores v. Lovelady,* 253 Kan. 274, 855 P.2d 487 (1993); *Blevins v. Hiebert,* 247 Kan. 1, 795 P.2d 325 (1990); *Moody v. Board of Shawnee County Comm'rs,* 237 Kan. 67, 697 P.2d 1310 (1985); *Board of Sedgwick County Comm'rs v. Noone,* 235 Kan. 777, 682 P.2d 1303 (1984); *Board of Lyon County Comm'rs,* 234 Kan. 732; and *Missouri Pacific Railroad,* 231 Kan. 225.

In all but three of these cases, this court struck down the county home rule action in question. The facts of the three cases in which we ruled otherwise are so distinct that they provide no guidance here. The resolution in *General Building Contr., LLC* dealt with a county's exercise of eminent domain power. *Dillon Stores* dealt with a county's hiring of an accounting firm to assist with the work of the appraiser. *Moody* rejected challenges under the First, Fourth, and Fourteenth Amendments to the United States Constitution to a county resolution regulating "adult" entertainment establishments. 237 Kan. at 76-78.

Of the six cases in which we struck down a county home rule resolution, *Trego County* bears the strongest factual resemblance to the case now before us. In that case, Trego County attempted through ordinary resolution to add requirements beyond those set forth by the State for the position of county appraiser. See K.S.A. 2003 Supp. 19-101a(a)(14), which states: "Counties may not exempt from or effect changes in" the state statute containing the requirements for that job. Although Trego County's effort, like the effort of Norton County here, could have been characterized as concurrent supplemental regulation merely setting forth more rigorous requirements not expressly prohibited by the State, this court held that Trego County had effected a change in the state statute and thus exceeded its home rule power under 19-101a(a)(14). 261 Kan. at 933-35.

We arrived at an identical conclusion in *Nielander.* In that case, Lincoln County passed a resolution giving its county commissioners exclusive authority to handle county personnel and then attempted to dismiss a deputy sheriff over the objections of the sher-

iff. See K.S.A. 2003 Supp. 19-101a(a)(15), which provides: "Counties may not exempt from or effect changes in" the state statute giving county sheriffs sole authority to manage their deputies. Again, we struck down the county resolution, recognizing that Lincoln County's action was an attempt to effect changes in the state provision. 275 Kan. at 266-67.

The reasoning and outcomes of *Trego County* and *Nielander* control here. The County's resolution imposes CAFO requirements that are more strict than those imposed by the State. The County is trying to exempt itself from or effect change in the state statutory provisions in violation of subsection (a)(30), and the resolution cannot stand.

On the facts of this case, we also can dispose of this appeal by holding that the County's home rule resolution fails because it is "contrary to any act of the legislature" under K.S.A. 2003 Supp. 19-101a(b). As counsel for the County was forced to admit at oral argument, the "local law prohibits what the state law permits," albeit implicitly. See *Trego County,* 261 Kan. 927, Syl. ¶ 5. We see no language in the county home rule statutes or cases to justify the County's attempt to distinguish express from implicit Kansas statutory permission for a given CAFO activity. That which is not prohibited by the statutory CAFO provisions is necessarily permitted by such provisions. When a County prohibits the same CAFO activity, its prohibition is "contrary to any act of the legislature." The County's argument that there was no conflict here is nothing more than a word game, exalting form over substance.

Given these two sound, alternative reasons for disposition of this matter, we see no need to address the parties' arguments on express or implied state preemption of the County's resolution. Suffice it to say that the analytical distinction between a county resolution that exempts a County from or effects changes in a state statutory requirement, one that is contrary to any act of the legislature, and one that has been expressly preempted may be exceedingly difficult to discern in certain circumstances, including those before us here.

The County also makes a halfhearted effort to justify its home rule resolution on the basis of its police power to regulate public

safety and health. Before the legislature's blanket grant of home rule power to counties in 1974, police power was repeatedly invoked to avoid what was then known as Dillon's rule (local governments may exercise only those powers specifically granted by legislature). See *General Building Contr., LLC*, 275 Kan. at 533-34. Dillon's rule prevented counties from legislating in any area other than one authorized in advance by passage of a specific statute. The enactment of county home rule statutes, K.S.A. 19-101 *et seq.,* eliminated Dillon's rule and, to a large extent, the need for police power analysis to justify a County's legislative acts. See 275 Kan. at 534. To the extent such analysis survives, however, we note that a County's exercise of police power still cannot conflict with state law. See *Blevins,* 247 Kan. at 5-10. Because we have already recognized a conflict between Kansas statutes and the resolution at issue here, the County's police power argument cannot rescue the home rule resolution.

We also are not persuaded by the County's argument based on uniformity or lack thereof in this particular context. To the extent uniformity has a role in the validity of county ordinary resolutions, we are satisfied that the state CAFO statutes which we are concerned with were uniformly applicable to all counties when Norton County passed its home rule resolution at issue. The only nonuniform statutory provision pointed out by the County was in effect for less than 1 year after initial passage of the CAFO legislation, from May 7 through December 31, 1998. See L. 1998, ch. 143, sec. 38.

Finally, we also need not address the district court's alternative holding on agricultural zoning. Our previous rulings mean the outcome in the district court had ample support without this alternative rationale.

Affirmed.