IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,998


AMERICAN WARRIOR, INC., and BRIAN F. PRICE,
*Appellants*,


v.


BOARD OF COUNTY COMMISSIONERS OF FINNEY COUNTY, KANSAS, and
HUBER SAND, INC.,
*Appellees.*


SYLLABUS BY THE COURT


1.

Mootness occurs when something changes during litigation to render a judicial decision ineffectual to the parties' rights and interests.


2.

K.S.A. 12-741(a) grants counties the authority to enact zoning regulations without state interference so long as those local enactments do not conflict with the Planning, Zoning, and Subdivision Regulations in Cities and Counties Act, K.S.A. 12-741 et seq. In keeping with this statutory scheme, K.S.A. 12-755 authorizes counties to adopt zoning regulations providing for issuance of conditional use permits.


Review of the judgment of the Court of Appeals in 63 Kan. App. 2d 123, 525 P.3d 789 (2023). Appeal from Finney District Court; WENDEL W. WURST, judge. Oral argument held November 14, 2023. Additional briefing completed January 29, 2024. Opinion filed July 26, 2024. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

1

*Patrick A. Edwards*, of Stinson LLP, of Wichita, argued the cause, and *David E. Bengtson*, of the same firm, and *Benjamin C. Jackson*, of Jackson Legal Group, LLC, of Scott City, were with him on the briefs for appellants.

*Linda J. Lobmeyer*, of Calihan Law Firm, P.A., of Garden City, argued the cause, and *Shane C. Luedke*, of the same firm, was with her on the briefs for appellees.

*Jay Hall*, general counsel, was on the brief for amicus curiae Kansas Association of Counties.

*Johnathan Goodyear*, general counsel, was on the brief for amicus curiae League of Kansas Municipalities.

The opinion of the court was delivered by

BILES, J.: K.S.A. 12-741(a) grants counties the authority to enact zoning regulations without state interference so long as those local enactments do not conflict with the Planning, Zoning, and Subdivision Regulations in Cities and Counties Act, K.S.A. 12-741 et seq. Exercising that authority, Finney County adopted local rules delegating the issuance of conditional use permits to a separate Finney County Board of Zoning Appeals. A Court of Appeals panel majority held the County could not do that, while a dissenting judge agreed with the district court that it could. See *American Warrior, Inc. v. Board of Finney County Comm'rs*, 63 Kan. App. 2d 123, 525 P.3d 789 (2023). We granted review to resolve the dispute. We hold the County's regulations do not conflict with state law. The Zoning Board validly issued the conditional use permit that sparked this litigation. We reverse the panel majority and affirm the district court.

FACTUAL AND PROCEDURAL BACKGROUND

The material facts are undisputed. Since 2017, American Warrior, Inc., owned an oil and gas lease covering about 177 acres southeast of the city of Pierceville, between

2

Highway 50 to the north and the Arkansas River to the south, and between the town of Pierceville and South Pierceville Road to the west and the Finney County/Gray County line to the east. In 2020, Huber Sand, Inc., bought surface rights to the same tract, along with surface rights to an adjoining property to the east across the Finney County line into Gray County. The tract was zoned as an agricultural district.

In May 2021, Huber applied to the Finney County Board of Zoning Appeals for a conditional use permit to operate a sand and gravel quarry under the Finney County, Kansas, Zoning Regulations, adopted by the Board of Finney County Commissioners. The Zoning Board published notice of Huber's application, announcing a public meeting in June. At that meeting, affected residents commented about authorized uses within agricultural zoning districts, the location of crushing equipment and the access road, condition of the river pit, road maintenance, Huber's operating hours, and traffic on the Pierceville roads. The Zoning Board tabled the matter until the next month.

At the July meeting, the Zoning Board received a report prepared by a Garden City municipal department, an entity established to guide development and support community livability. It recommended the application's approval. The Zoning Board also received protest petitions from more than 100 Pierceville residents. In the end, it approved the application on a 2-1 vote with conditions.

In August, Brian F. Price, a Finney County resident who owned land near the tract, and American Warrior (collectively "American Warrior") sued the Finney County Commission and Huber, challenging the permit's legality. They claimed the local procedure for issuing the permit violated state law, citing K.S.A. 12-757 (procedures for amending zoning regulations). They argued state statutes require a permit application be reviewed first by the county planning commission before the board of county commissioners consider it. Both sides submitted competing summary judgment motions.

3

The district court granted judgment for the County and Huber. It held the County properly delegated its power to issue conditional use permits to the Zoning Board. American Warrior appealed to the Court of Appeals, where a panel majority reversed the district court. The panel majority held the County's local procedure conflicted with K.S.A. 12-757, relying on *Crumbaker v. Hunt Midwest Mining, Inc.*, 275 Kan. 872, 69 P.3d 601 (2003), and *Manly v. City of Shawnee*, 287 Kan. 63, 194 P.3d 1 (2008). *American Warrior*, 63 Kan. App. 2d at 133. Chief Judge Arnold-Burger disagreed. 63 Kan. App. 2d at 134 (Arnold-Burger, C.J., dissenting).

The County and Huber sought our review, which we granted. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

MOOTNESS

The County's zoning regulations create a threshold question about mootness because the Zoning Board approved Huber's permit on July 21, 2021, and section 28.070 states:  "All conditional use permits shall be valid for one (1) year from the date it was approved by the Board of Zoning Appeals; if project has not been substantially completed within one (1) year of approval, the conditional use permit shall expire." Section 2.020(4) defines "shall" as "mandatory."

Mootness occurs when something changes during litigation that may render a judicial decision ineffectual to the parties' rights and interests. See *State v. Roat*, 311 Kan. 581, Syl. ¶ 1, 466 P.3d 439 (2020). We asked the parties to discuss this at oral argument

4

and later ordered additional briefing. Both sides agree the permit has not expired. We agree with them.

*Standard of review*

Courts review mootness questions de novo. *Roat*, 311 Kan. at 590. To the extent the question involves regulatory interpretation and construction, review is unlimited. We follow the express language used when it is plain and unambiguous, giving common words their ordinary meanings, without adding to or subtracting from the text. Courts resort to textual construction only when the language is ambiguous. *Central Kansas Medical Center v. Hatesohl*, 308 Kan. 992, 1002, 425 P.3d 1253 (2018). We apply the same rules to interpreting regulations as we do when interpreting a statute. See *Robinson v. City of Wichita Employees' Ret. Bd. of Trustees*, 291 Kan. 266, 272, 241 P.3d 15 (2010).

*Discussion*

American Warrior claims that "when read as a whole, [section 28.070] allows for a conditional use to continue as long as it is maintained if the 'project' is 'substantially completed' within one year of when the [Zoning Board] approved the [conditional use permit]." Similarly, the County and Huber contend "the notion that a conditional use would expire upon a technical failure of not reapplying for a permit yearly, creates an absurd result." Their points are well taken.

At a glance, section 28.070's first clause ("All conditional use permits shall be valid for one [1] year from the date it was approved by the Board of Zoning Appeals.") seems clear and implies conditional use permits expire after that one-year period. But read with the second clause ("[I]f project has not been substantially completed within one

[1] year of approval, the conditional use permit shall expire."), the text provides a second meaning—a permit remains valid for a minimum duration of one year and expires only if the project is not substantially completed within a year.

This second meaning is the better view and aligns with the second clause's purpose and function to provide a logical understanding of the regulatory language. See *State v. Strong*, 317 Kan. 197, 203, 527 P.3d 548 (2023) ("[C]ourts may consult canons of construction to resolve the ambiguity. 'The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.' [Citations omitted.]"). Reading section 28.070 to invalidate a permit after one year renders the second clause redundant and nonsensical. See *Fisher v. Kansas Crime Victims Comp. Bd.*, 280 Kan. 601, 613, 124 P.3d 74 (2005) (stating the Legislature "does not intend to enact useless or meaningless legislation and the obligation to interpret a statute in such a way that part of it does not become surplusage").

Simply put, section 28.070 means:  a permit is valid for at least one year, which can extend beyond that year if the project is substantially completed. Here, neither side raises a substantial completion issue. We hold this litigation is not moot and proceed to decide the merits.

COUNTY AUTHORITY TO DELEGATE ZONING REGULATION

In keeping with the statutory scheme, K.S.A. 12-755 authorizes counties to adopt zoning regulations providing for issuance of conditional use permits. Here, the district court granted judgment to the County and Huber, holding the County properly issued the conditional use permit through its Zoning Board in accordance with the County's regulations. We agree.

*Standard of review*

Appellate courts review de novo a district court's grant of summary judgment. *First Security Bank v. Buehne*, 314 Kan. 507, 510, 501 P.3d 362 (2021). Likewise, we interpret statutes and regulations de novo based on their plain language. *Central Kansas Medical Center*, 308 Kan. at 1002.

*Local enactments*

The Board of Finney County Commissioners first adopted its zoning regulations in 1995. The 2021 version applies here. Article 4 governs agricultural districts, listing permitted uses and structures and specifying conditional uses, including sand and gravel quarries, "*may be permitted* only after they have been reviewed and approved as required by Article 29." (Emphasis added.) Regulations, §§ 4.020, 4.030. The regulatory definition of "conditional use" means:

> "A use of any building, structure or parcel of land that, by its nature, is perceived to require special care and attention in siting so as to assure compatibility with surrounding properties and uses. Conditional uses are allowed only after public notice, hearing and approval as prescribed in these Regulations and may have special conditions and safeguards attached to assure that the public interest is served." Regulations, § 2.030(36).

Meanwhile, a "conditional use permit" is a "written document of certification issued by the Zoning Administrator permitting the construction, alteration or establishment of a [c]onditional [u]se." Regulations, § 2.030(37). "Conditional use permit" is commonly interchanged with "special use" and "exceptions," a practice the County appears to follow. Compare 2 Am. Law Zoning § 14:1 (5th ed.), with Regulations

7

§ 2.030(61) ("Exception - An exception shall always mean the allowance of otherwise prohibited use within a given district, such use and conditions by which it may be permitted being clearly and specifically stated within this Zoning Regulation, and the allowance being granted by conditional use permit from the Board of Zoning Appeals."); see also Black's Law Dictionary 1685 (11th ed. 2019) ("special-use permit" is a "zoning board's authorization to use property in a way that is identified as a special exception in a zoning ordinance" and "[a]lso termed conditional-use permit"); Black's Law Dictionary 1683 ("special exception" is an "allowance in a zoning ordinance for special uses that are considered essential and are not fundamentally incompatible with the original zoning regulations" and "[a]lso termed . . . conditional use; special use").

Article 29 governs the Zoning Board's authority over conditional use exceptions. Under section 29.040, the Zoning Board may grant conditional use exceptions authorized by the Regulations, so long as those uses comply with the relevant provisions and are appropriately integrated into the community. In pertinent part, it states:

> "The Board of Zoning Appeals may authorize, as an exception to the provisions of these zoning regulations, the establishment of those conditional uses that are expressly authorized to be permitted as a conditional use in a particular zoning district . . . . No conditional use shall be authorized as an exception to these regulations unless the Board is specifically authorized, by these regulations, to grant such conditional use and unless such grant complies with all of the applicable provisions of these regulations.
>
> "The purpose of the conditional use permit is to allow proper integration of uses into the community which may only be suitable in specific locations, and may have potentially detrimental characteristics if not properly designed, located, and conditioned. A conditional use permit may be granted only for uses listed as conditional uses in respective zones . . . ." Regulations § 29.040.

This same section outlines the application process for a conditional use permit, which Huber followed. It applied, detailing information like plots, plans, and drawings, showing how the conditional use will affect adjacent properties, to the Zoning Board at least 28 days before its meeting. See Regulations § 29.040(A)(1)-(8). Once submitted, the Zoning Board must consider section 29.050's factors to evaluate the requested use's impact on County inhabitants' well-being and zoning district stability. The Zoning Board must also impose safeguards as needed to protect neighboring properties.

Article 28 broadly governs the Zoning Board—dictating its composition, authority, and jurisdiction. The Zoning Board is made up of three members. Regulations § 28.010. It has the authority and jurisdiction:

> "To hear and grant exceptions to the provisions of the zoning regulation in those instances where the Board of Zoning Appeals is specifically authorized to grant such exceptions and only under the terms of the zoning regulation. In no event shall exceptions to the provisions of the zoning regulation be granted where the use or exception contemplated is not specifically listed as an exception in the zoning regulation. Further, under no conditions shall the Board of Zoning Appeals have the power to grant an exception when conditions of this exception, as established in the Zoning regulation by the Governing Body, are not found to be present." Regulations § 28.030(6).

And it may make decisions as follows:

> "The Board of Zoning Appeals may affirm or reverse, wholly or partly, or may modify the order, requirement, decision, or determination appealed from, and may make such order, requirement, decision or determination as ought to be made, and to that end shall have all the powers of the zoning administrator and *may issue or direct the issuance of a permit. The concurring vote of two (2) members of the Board of Zoning Appeals shall be necessary* to reverse any order, requirement, decision, or determination of the Building Inspector or Zoning Administrator, or *to decide in favor of the applicant* upon any matter

9

which it is required to pass under any such ordinance, or to effect any variation in such ordinance. . . ." (Emphases added.) Regulations § 28.050.

In summary, article 4 permits sand and gravel quarries in agricultural districts as conditional uses; article 29 delegates issuing power to the Zoning Board; and article 28 requires two of three Board members to agree when deciding in an applicant's favor.

*Statutory scheme*

To resolve whether the County's action complied with state law, we now dive into the Planning, Zoning, and Subdivision Regulations in Cities and Counties Act. This Act enables cities and counties to pass planning and zoning regulations "for the protection of the public health, safety and welfare, and is not intended to prevent the enactment or enforcement of additional laws and regulations on the same subject which are not in conflict with the provisions of this act." K.S.A. 12-741(a).

The Act empowers counties, through their boards of county commissioners, to enact or amend zoning regulations by adopting resolutions using the applicable statutory procedure. K.S.A. 12-753; see also K.S.A. 12-756 (procedures to establish zones); K.S.A. 12-757 (procedures to amend the existing zones). The Act also grants the board of county commissioners power to regulate issuing special or conditional use permits. K.S.A. 12-755(a)(5). And it reflects legislative intent to enable counties' home rule powers on zoning matters. See K.S.A. 19-101 ("[E]ach organized county . . . shall be empowered . . . to exercise the powers of home rule to determine their local affairs and government authorized under the provisions of K.S.A. 19-101a . . . [and] to exercise such other and further powers as may be especially conferred by law."); *David v. Board of Norton County Comm'rs*, 277 Kan. 753, 755, 89 P.3d 893 (2004) ("Kansas counties derive all of

10

their home rule authority from a statutory scheme originally enacted in 1974. See K.S.A. 19-101 et seq.").

That said, a county's zoning power may be limited by state law through preemption, which occurs when the "legislative intent to reserve exclusive jurisdiction to the state [is] clearly manifested by statute—i.e., by expressly prohibiting cities from enacting any type of ordinance related to the state law." *DWAGFYS Manufacturing, Inc. v. City of Topeka*, 309 Kan. 1336, 1341, 443 P.3d 1052 (2019). But the Act contains no such express statement of preemption for conditional use permits. Still, K.S.A. 12-741(a) says state zoning law preempts any county regulations "in conflict with the provisions of this act." Cf. K.S.A. 19-101a(a)(1) ("Counties shall be subject to all acts of the legislature which apply uniformly to all counties."); *Crumbaker*, 275 Kan. at 886 (zoning legislation is generally considered as "'the field with a uniformly applicable enactment'").

Here, American Warrior argues state law preempts what it views as conflicting county regulations on conditional use permits. It claims the Zoning Board should have followed K.S.A. 12-757's amendment procedures before issuing Huber's permit. The panel majority agreed, citing *Crumbaker* and *Manly*, both of which analyzed whether a zoning board properly allowed a conditional use under K.S.A. 12-757. *American Warrior*, 63 Kan. App. 2d at 133; *Crumbaker*, 275 Kan. at 885-87; *Manly*, 287 Kan. at 67-68. On the other hand, Finney County and Huber contend state law does not preempt Finney County's regulations because the permit did not "supplement, change or generally revise the boundaries or regulations contained in zoning regulations." See K.S.A. 12-757(a). The panel's dissent concurred with them. *American Warrior*, 63 Kan. App. 2d at 146.

To decide this, we must consider whether the County's zoning procedures conflict with any of the Act's provisions. We begin with the statute at issue. K.S.A. 12-757(a) reads:

> "The governing body, from time to time, may *supplement, change or generally revise the boundaries or regulations contained in zoning regulations by amendment.* A proposal for such amendment may be initiated by the governing body or the planning commission. If such proposed amendment is not a general revision of the existing regulations and affects specific property, the amendment may be initiated by application of the owner of property affected. . . ." (Emphasis added.)

Put simply, any additions, modifications, corrections, or improvements to "the boundaries or regulations contained in zoning regulations," require counties follow K.S.A. 12-757's steps. See *Hatesohl*, 308 Kan. at 1002 (courts give common words their ordinary meanings); Merriam-Webster Online Dictionary (to "supplement" means "to add") (defining to "change" as "to make different in some particular" or "to replace with another") (to "revise" means "to look over again in order to correct or improve" or "to make a new, amended, improved, or up-to-date version of"); Black's Law Dictionary 102 (11th ed. 2019) ("amendment" is "[a] formal and usu. minor revision or addition proposed or made to a statute, constitution, pleading, order, or other instrument; specif., a change made by addition, deletion, or correction; esp., an alteration in wording"); cf. K.S.A. 19-101c ("The powers granted counties pursuant to this act shall be referred to as county home rule powers and they shall be liberally construed for the purpose of giving to counties the *largest* measure of self-government." [Emphasis added.]).

K.S.A. 12-757 applies only to changing zoning regulations by amendment. As the panel dissent observed:

12

"A conditional-use permit does not change the existing zoning of a tract of land. The Tract here is zoned agricultural and remains zoned agricultural. Under the Finney County, Kansas, Zoning Regulations sand and gravel quarries are allowed on land zoned as agricultural. So anyone purchasing property around agriculturally zoned property is on notice that sand and gravel quarries are permitted. But the county may place conditions on the use of the land. The placement of these conditions does not constitute an amendment to the zoning regulations or the zoning of the tract. It is and remains agricultural. The zoning regulations of the county remained the same both before and after the issuance of the conditional-use permit here. That accords with both the county definition of a conditional-use permit and the generally accepted definition of a conditional use." *American Warrior*, 63 Kan. App. 2d at 136.

So did Huber's application ask the County to supplement, change, or revise the Regulations and thereby create a conflict with K.S.A. 12-757? In short: no.

Huber's "Application for Conditional Use or Exception" sought to use property zoned as agricultural for its sand and gravel quarry operation based on the existing county regulations. See Regulations § 4.030 (permitting "[s]tate approved . . . sand and gravel quarries" in agricultural zones "after they have been reviewed and approved" by the county). As explained, such a permit is the Zoning Board's authorization to use property in a way identified as a conditional exception by the Regulations. This aligns with Huber's proposal and the necessary action to approve it—no supplement, change, or revision to existing boundaries or regulations needed.

Next, we turn to K.S.A. 12-759, which specifically contemplates zoning board authority and special uses. Under subsection (a), the Finney County Commission created the Zoning Board with article 28, dictating the Board's composition, authority, and jurisdiction. And under subsection (e), it gave the Zoning Board broad authority in article 29 to hear, vote upon, and grant conditional use permits through a standard application

13

and evaluation process. See K.S.A. 12-759(e)(2) ("When deemed necessary by the board of zoning appeals, the board may . . . *grant exceptions* to the provisions of the zoning regulation in those instances where the board is specifically authorized to grant such exceptions and only under the terms of the zoning regulation." [Emphasis added.]).

Subsections (a) and (e) govern Huber's permit. The panel majority mistakenly believed subsection (d) applied, but it only specifies the process to appeal "any decision of the officer administering the provisions of the zoning ordinance" to a specific zoning appellate board. K.S.A. 12-759(d). Subsection (d) is inapplicable because the Zoning Board granted Huber's permit, not some individual officer through administrative action. By complying with subsections (a) and (e), the County's zoning regulations in articles 28 and 29 align and do not conflict with K.S.A. 12-759.

American Warrior argues for the first time on appeal that K.S.A. 12-757a supports its position. K.S.A. 12-757a states: "No city or county may establish procedures regarding the adoption of special use or conditional use permits for mining operations . . . which require the approval of more than a majority of all members of the governing body." And American Warrior asserts the timing of K.S.A. 12-757a's passage after *Crumbaker* and *Manly* suggests the Legislature approved of how those cases interpreted K.S.A. 12-757. It argues the Legislature "could have and should have amended [K.S.A. 12-757] at that time to exclude [conditional use permits]" if it disagreed. There is a lot wrong with this.

First, K.S.A. 12-757 never refers to conditional use permits and, in fact, excludes them from its governance. Further, K.S.A. 12-755(a)(5) (allowing counties to adopt their own regulations to issue conditional use permits) and K.S.A. 12-759(e) (allowing a board of zoning appeals to grant exceptions) make no reference to K.S.A. 12-757, and vice versa. Second, American Warrior's interpretation would make K.S.A. 12-757a

14

duplicative of K.S.A. 12-757(g). In other words, if K.S.A. 12-757 uniformly applied to issuing conditional use permits, subsection (g) would already govern such exceptions and K.S.A. 12-757a would not need to exist. See *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 626, 413 P.3d 432 (2018) (courts generally presume the Legislature does not intend to enact useless or meaningless legislation); *Kansas One-Call System v. State*, 294 Kan. 220, 233, 274 P.3d 625 (2012) ("'[V]arious provisions of an act *in pari materia* must be construed together in an effort to reconcile the provisions so as to make them consistent, harmonious and sensible.'"; "'An appellate court's duty, as far as practicable, is to harmonize different statutory provisions to make them sensible.'").

The panel majority critically failed to engage in a straightforward, textual interpretation of the Act and Regulations. Instead, it looked first to *Crumbaker* and *Manly* and improperly extended their holdings to the present controversy. See *American Warrior*, 63 Kan. App. 2d at 126-32. But neither applies.

*Crumbaker* held K.S.A. 12-757 governed changing land use in a city whose local zoning regulations required compliance with state law, which is distinguishable from Finney County's regulations that have no such requirement. See *Crumbaker*, 275 Kan. at 885-86. And *Manly*'s use of K.S.A. 12-757 to evaluate a special use permit's validity is similarly inapplicable, because that court never had a chance to rule on the legal issue presented here since neither party nor the court questioned K.S.A. 12-757's applicability. The *Manly* decision interpreted the statute without answering the foundational inquiry of whether an appropriate city ordinance governed. See *Manly*, 287 Kan. at 67-68. As the district court here observed, applying *Manly* would be an unjustified stretch. The panel majority's reliance on *Crumbaker* and *Manly* was unwarranted. See *American Warrior*, 63 Kan. App. 2d at 130-31.

15

The other cases cited by the panel majority or American Warrior are similarly distinguishable or inapplicable since they misunderstand *Crumbaker* or *Manly*. See *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, 218 P.3d 400 (2009) (distinguishable; amending zoning regulations under K.S.A. 12-757); *Johnson County Water Dist. No. 1 v. City of Kansas City*, 255 Kan. 183, 871 P.2d 1256 (1994) (distinguishable; challenging the reasonableness of conditions imposed in granting a special use permit under K.S.A. 12-757[c] [judicial review of local government's final decision]); *Pretty Prairie Wind v. Reno County*, 62 Kan. App. 2d 429, 517 P.3d 135 (2022) (distinguishable; challenging a form of the protest petitions; here, discussing K.S.A. 12-757[f] created no problem since Reno County Zoning Regulations § 20-102 [2016] contained sufficiently similar requirements); *Kaw Valley Companies v. Board of Leavenworth County Comm'rs*, No. 124,525, 2022 WL 3693619, at *8 (Kan. App. 2022) (unpublished opinion) (misunderstanding *Manly*); *Ternes v. Board of Sumner County Comm'rs*, No. 119,073, 2020 WL 3116814, at *12 (Kan. App. 2020) (unpublished opinion) (misunderstanding *Crumbaker* and *Manly*); *Vickers v. Franklin Co. Bd. of Comm'rs*, No. 118,649, 2019 WL 3242274, at *4 (Kan. App. 2019) (unpublished opinion) (misunderstanding *Crumbaker* and *Manly*); *R.W.D. No. 2 v. Board of Miami County Comm'rs*, No. 105,632, 2012 WL 309165 (Kan. App. 2012) (unpublished opinion) (challenging the validity and reasonableness of decision denying a conditional use permit; like *Manly*, application of K.S.A. 12-757 was uncontested).

We hold K.S.A. 12-757 does not preempt a county's issuance of conditional use permits. Finney County's zoning procedures for issuing conditional use permits do not conflict with the governing state law. The panel majority erred by holding K.S.A. 12-757 controlled Huber Sand's application of a conditional use permit.

Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed.

16